# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK
### SYRACUSE DIVISION

=============================================

ERIC J. ELDRED, JR., RICHARD BORDEN,
MATTHEW CAEZZA, BRIAN FRANK, and
MARK MACLAURY on behalf of themselves
and those similarly situated,

               Plaintiffs,

      -against-

COMFORCE CORP., and its subsidiary companies
Comforce Telecom, Inc., Comforce Information
Technologies, Inc., Comforce Technical Services,
Inc., Comforce Technical, LLC, Comforce
Operating, Inc., Sumtec Corp., and Prestige-
Comforce Professional Services; JOHN
FANNING, individually and in his capacity as
Chairman and Chief Executive Officer of
Comforce Corp., Comforce Information Tech.,
Inc., and Comforce Operating; HARRY
MACCARRONE, individually and in his capacity
as Chairman and Chief Executive Officer of
Comforce Telecom, Inc., Comforce Technical
Services, Inc., and Sumtec Corp.; PETER PETIX,
individually and in his capacity as Vice President
and General Manager of Comforce Telecom, Inc.;
the COMMUNICATION WORKERS of
AMERICA; ANDY MILBURN, individually and
in his capacity as Vice-President of CWA District
6; RICHARD KNEUPPER, individually and in his
capacity as Assistant to District Vice-President  of
CWA District 6;  DONNA BENTLEY,
individually and in her capacity as CWA Staff
Representative in District 6;  CWA LOCAL 6171;
ALAN WHITTAKER, individually and in his
capacity as President of CWA Local 6171; MIKE
SIMMONS, individually and in his past capacity
as President of CWA Local 6171; and LINDA
JAMES, individually and in her capacity as
Executive Vice-President of CWA Local 6171;

               Defendants.

**PLAINTIFFS' MEMORANDUM
OF LAW IN OPPOSITION TO
DEFENDANT COMFORCE
CORP, ITS SUBSIDIARY
COMPANIES, AND
INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS**

JURY TRIAL DEMANDED

CIVIL CASE NO.:
3:08-cv-01171
LEK – DEP

_____

CLASS ACTION

and

RACKETEER INFLUENCED and
CORRUPT ORGANIZATIONS
ACT
_____

TABLE OF CONTENTS

Preliminary Statement................................................................................................................1

Point I...........................................................................................................................................1
  Standard Of Review...................................................................................................................1

Point II. .......................................................................................................................................3
  Matters Outside the Pleadings ..................................................................................................3

Point III ........................................................................................................................................4
  The Class Plaintiffs' Claims Against Comforce Defendants Are Not Pre-Empted
  Or Time-Barred..........................................................................................................................4

Point IV.........................................................................................................................................9
  Plaintiffs' First and Second Claims For Relief Under The FLSA ..............................................9

Point V. ......................................................................................................................................12
  Plaintiffs' Third Claim for Relief for Unauthorized Withholding of Wages.............................12

Point VI.......................................................................................................................................14
  Plaintiffs' Fourth Claim for Relief for Unpaid Wages under New York Labor Law.................14

Point VII......................................................................................................................................15
  Plaintiffs' Fifth Claim for Relief.............................................................................................15

Point VIII.....................................................................................................................................20
  Plaintiffs' Sixth and Seventh Claim for Relief .......................................................................20

Point IX.......................................................................................................................................21
  Tenth Claim for Relief, Plaintiff Eldred's Individual Claim for Retaliation ............................21

Point X .......................................................................................................................................22
  Eleventh Claim for Relief, Plaintiff Eldred's Individual Claim for Wrongful
  Termination..............................................................................................................................22

Point XI.......................................................................................................................................24
  Plaintiff's Twelfth Claim for Relief.........................................................................................24

Point XII......................................................................................................................................29
  Plaintiff's Fourteenth Claim for Relief – Conversion..............................................................29

Point XIII.....................................................................................................................................30
  Plaintiff's Fifteenth Claim for Relief – Fraud..........................................................................30

Conclusion ........................................................................................................................32

TABLE OF AUTHORITIES

**Cases**

Ahles v. Aztec Enterprises, Inc., 120 A.D.2d 903 (3d Dept 1986).................................. 29
Alcantara v. Allied Properties, LLC,334 F.Supp.2d 336, (2004) .................................. 7, 8
Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 212 (1985) ............................................ 5
AmBase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63, 72 (2d Cir. 2003) .. 1
ATSI Commcations, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) ................ 1
Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 [2007].......................................... 1
Berman v. Goldsmith, 141 A.D.2d 487 (2d Dept 1988).................................................. 29
Bradkin v. Leverton, 26 N.Y.2d 192, 197 (1970)......................................................... 19
Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314 (1983) ................... 19
Caterpillar, Inc. v. Williams, 482 U.S. 386, 395 (1987)..................................... 5, 6, 23, 24
Choimbol v. Fairfield Resorts, Inc., 2006 WL 2631791 (E.D. Va. Sept. 11, 2006)... 24, 25
Clairdale Enters. v. C. I. Realty Investors, 423 F. Supp. 257 (S.D.N.Y. 1976)............... 31
Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) ..................................................... 2
Conley v. Gibson, 355 U.S. 41, 45-6 (1957) ................................................................ 2
Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998)..................................................... 1
Cox v. NAP Constr. Co., Inc., 10 N.Y.3d 592 (2008)............................................. 17, 18
Derrico v. Sheehan Emergency Hospital, 844 F. 2d 22 (2nd Cir. 1988)........................... 9
Dover Ltd. v. A.B. Watley, Inc., 423 F.Supp.2d 303, 328 (S.D.N.Y. 2006)................... 30
Electrical Workers v. Heckler, 481 U.S. 851, 859, n. 3 (1987) ...................................... 5
Elliott v. Qwest Communications Corp., 25 A.D.3d 897, 898 (3d Dept. 2006)............... 16
Fata v. S. A. Healy Co., 289 N.Y. 401 [1943].............................................................. 17
Fowlkes v. Adamec, 432 F.3d 90, 95 (2d Cir. 2005)..................................................... 1
Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) ............................... 2
Gaston v Taylor, 274 NY 359, 9 NE2d 9 (1937)......................................................... 16
Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir.
     2006) ................................................................................................................... 3
Godlewska v. HAD, Human Development Association, Inc., 2006 U.S. Dist. Lexis 30519
     (E.D.N.Y. 2006)................................................................................................. 25
Higueros v. New York State Catholic Health Plan, Inc., 526 F. Supp.2d 342, 347
     (E.D.N.Y. 2007)................................................................................................. 21
In re Investors Funding Corp. Sec. Litig., 523 F. Supp. 550, 559 (S.D.N.Y. 1980)......... 32
Jakobe v. Rawlings Sporting Goods Co., 943 F. Supp. 1143, 1149 (E.D. Miss. 1996) ..... 4
Joseph Sternberg, Inc. v. Walber 36th St. Assocs., 187 A.D.2d 225 (1st Dept. 1993)..... 20
Korthas v. Northeast Foods, Inc., 2006 US Dist. Lexis 18846 (N.D.N.Y. 2006)............. 14
Kramer v. Time-Warner, Inc., 937 F.2d 767, 774 (2nd Cir. 1991) ................................. 4
Lawrence v. Fox, 20 N.Y. 268 [1859] ........................................................................ 17
Levy v. Verizon Info. Servs., Inc., 498 F.Supp.2d 586, 569 (E.D.N.Y. 2007)................. 7
Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 410 (1988) .................. 5, 23
Livadas v. Bradshaw, 512 U.S. 123-24(1994)............................................................. 5
LoPresti v. Terwilliger, 126 F.3d 34, 41 (2d Cir 1997)................................................. 30
Matter of King, 305 A.D.2d 683 (2d Dept 2003) ......................................................... 29

Matter of Rausman, 50 A.D.3d 909 (2d Dept 2008) ........................................................ 29

Meese v. Miller, 79 A.D.2d 237 (4th Dept. 1981)............................................................ 29

Moore and Parry v. Painewebber, Inc., 189 F. 3d 165 (2nd Cir. 1999)........................... 27

Morelli v. Cedel, 141 F.3d 39, 45-46 (2d Cir. 1998).......................................................... 3

O'Brien v. City of Syracuse, 54 N.Y.2d 353, 358 (1981) ................................................ 19

Re/Max All-Pro Realty, Inc. v. N.Y.S. Dep't of State, 292 A.D.2d 831 (4th Dept 2002) 29

Scheuer v. Rhodes, 416 U.S. 232, 235-36 [1974]............................................................... 2

Siler v. Lutheran Soc. Servs., 10 A.D.3d 646 (2d Dept. 2004) ....................................... 31

Smith v. Kirkpatrick, 305 N.Y. 66, 73 (1953) ................................................................. 19

State v. Seventh Regiment Fund, Inc., 98 N.Y.2d 249 (2002) ......................................... 29

Strong v. American Fence Constr. Co., 245 N.Y. [1927].................................................. 17

Summer v. Land & Leisure, Inc., 664 F.2d 965 (5th Cir. 1981), cert den 458 U.S. 1106
    (1982)........................................................................................................................... 32

United States ex rel. Johnson v. Morley Constr. Co., 98 F.2d 781, 788-89 (2d Cir 1938)18

Vadino v. Valley Engineers, 903 F. 2d 253, 266 (3d Cir. 1990) ....................................... 9

Vera v. Saks & Co., 335 N.Y. 109, (2nd Cir. 2003) ....................................................... 12

Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.1995)........................... 2

Weizmann Inst. of Sci. v. Neschis, 229 F. Supp. 2d 234, 246 (S.D.N.Y. 2002) ............... 3

## PRELIMINARY STATEMENT

The Motion to Dismiss filed by the individual Comforce defendants refers to the Motion to Dismiss of Comforce Corp. for legal arguments in support of their motion. As such, the plaintiffs submit this Memorandum of Law in opposition to the Motions to Dismiss filed by all Comforce entities and individual defendants. As such, all references to Comforce Corp. refers to Comforce Corp., its subsidiary companies and individual defendants identified in the caption of the Second Amended Complaint.

## POINT I

### Standard Of Review

The Second Circuit has recognized that "a court's lone task in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *AmBase Corp. v. City Investing Co. Liquidating Trust,* 326 F.3d 63, 72 (2d Cir. 2003) (internal quotation marks and citation omitted). Therefore, in reviewing a motion to dismiss, a court "must accept the facts alleged in the complaint as true and construe all reasonable inferences in [the plaintiff's] favor." *Fowlkes v. Adamec,* 432 F.3d 90, 95 (2d Cir. 2005) (citation omitted); *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998). More recently, the Second Circuit held that, "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commcations, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 [2007]).

The issue "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235-36 [1974]).  Accordingly, a motion to dismiss under Rule 12 (b) (6) must be denied "unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief*." Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (internal quotations omitted)(emphasis added); *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957).  The possibility of success on a claim may be "remote and unlikely on the face of the pleading, but that is not the test for dismissal." *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995).

Based on the forgoing, having a complaint dismissed for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12 (b) (6) is a difficult undertaking by a defendant in any action.  In the action at bar, the plaintiffs have pleaded a series of facts with sufficient particularity, including 22 pages of background facts and nine exhibits in support, to allow this Court to recognize their collective "right to relief above the speculative level."  Clearly, based on the factual information contained in the Second Amended Complaint (hereinafter "SAC"), viewed in a light most favorable to the non-moving party, the plaintiffs can easily prove a panoply of "facts in support of [their] claim which would entitle [them] to relief."  Thus, the Motion to Dismiss by the Comforce Corp. and individual Defendants, Fanning, Maccarone and Petix, should be denied in its entirety and this action should proceed to discovery.

**POINT II**

**MATTERS OUTSIDE THE PLEADINGS**

In deciding a Rule 12(b)(6) motion, a Court may not consider evidence "outside the pleadings" without first giving the opposing party a reasonable opportunity to present all material pertinent to the motion, and the Court must then treat the motion as one for summary judgment.  Fed. R. Civ. Pro. 12 (d); *See Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006); *Morelli v. Cedel*, 141 F.3d 39, 45-46 (2d Cir. 1998)) (Once a court is presented with matters outside the pleadings, it can either exclude the extrinsic documents or it will be "obligated to convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56") Despite this clear mandate, Defendants Fanning, Maccarone and Petix have attempted to introduce a panoply of facts, legal conclusions and unverifiable records by way of attorney affirmations, none of which are referenced in any way or incorporated into the Second Amended Complaint.

Furthermore, courts may take judicial notice of the existence of certain publicly-available records, and may take notice of certain widely known adjudicative facts not reasonably subject to dispute.  *See* Fed. R. Evid. 201; *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 246 (S.D.N.Y. 2002) (where the court decided that it could not consider a declaration meant to "provide a brief background of the issues set forth in the Complaints . . . and to rebut some of the 'facts' provided by the [opposing party]").  Just as was asked in *Neschis*, the Defendants have improperly asked this Court to take judicial notice of an affirmation purported to give "an historical perspective" of facts deemed to

be relevant only by the Defendants.  See Affirmation of Richard E. Fish, Document 46-2, at ¶ 8.    On the other hand, "it is highly impractical and inconsistent with Fed. R. Evid. 201 to preclude a district court from considering [public disclosure documents filed with the SEC] when faced with a motion to dismiss."  *Kramer v. Time-Warner, Inc.*, 937 F.2d 767, 774 (2nd Cir. 1991) (a court can take judicial notice of "public disclosure documents required by law to be filed, and actually filed, with the SEC"); *see also Jakobe v. Rawlings Sporting Goods Co.*, 943 F. Supp. 1143, 1149 (E.D. Miss. 1996) (taking judicial notice of defendant's Form 4).  Therefore, plaintiffs respectfully request that this Court take judicial notice of Defendant Comforce's SEC filings, attested to by Defendant Maccarrone.  *See* Affirmation of Frank S. Gattuso, Exhibit [A], dated March 17, 2009.  In the defendant's SEC filing, Comforce Corp. indicates that neither they nor its subsidiaries "is subject to any collective bargaining agreement," but also that none of them are even "subject to an employment contract."  *See id.*, Section 4.24 at II-63 (The SEC filing indicates that "Schedule 4.24" may identify the existence of some collective agreements, but that particular schedule was not filed contemporaneous with the December 12, 2000 filing now at issue).

## POINT III

### The Class Plaintiffs' Claims Against Comforce <u>Defendants Are Not Pre-Empted Or Time-Barred</u>

Section 301 of the LMRA states that "suits for violation of contracts between an employer and a labor organization representing employees…may be brought in any district court of the United States having jurisdiction of the parties…" 29 U.S.C. 185(a). However, section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred

on individual employees as a matter of state law…it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement, that decides whether a state cause of action may go forward." *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994) (internal quotations omitted). "[T]he pre-emption rule has been applied only to assure that the purposes animating [section] 301 will be frustrated neither by state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement.'" *Id*. at 122-23 (*quoting Allis-Chalmers, Corp. v. Lueck*, 471 U.S. 202, 211 (1985). The Supreme Court has made it clear that "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim be extinguished." *Livadas,* 512 U.S. at 124. Where there is an independent statutory basis for the rights sought to be enforced, the claim cannot be preempted. "Section 301 governs claims founded directly on rights created by collective bargaining agreements, and also claims 'substantially dependent upon an analysis of a collective bargaining agreement.'" *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 410, n. 10 (1988); *quoting Electrical Workers v. Heckler*, 481 U.S. 851, 859, n. 3 (1987).

The Supreme Court has repeatedly stated that "'it would be inconsistent with congressional intent under [section 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 395 (1987); *quoting Lueck*, 471 U.S. at 212. A plaintiff, even though covered by a collective-bargaining agreement, may assert legal rights independent of that agreement, including state law contract rights. *Caterpillar, Inc.*, 482 U.S. at 396.

Where the collective-bargaining agreement is irrelevant to the individual employment contract, there is no need to pre-empt the claim under section 301 of the LMRA. *Id.* In *Caterpillar, Inc. v. Williams*, the respondent-employees relied on contractual agreements made while they were in managerial or weekly salaried positions, agreements in which the collective-bargaining agreement played no part. *Caterpillar, Inc.*, 402 U.S. at 387-389. The court found it would be inappropriate to pre-empt the claim in that case, holding that all individual employment contracts are not necessarily subsumed into, or eliminated by, the collective-bargaining agreement. *Id.* at 395-396.

Generally, the cases relied upon by Comforce Corp. regarding LMRA pre-emption concern interpreting a specific provision within a collective bargaining agreement. The issues before the Court of the first five Claims for Relief do not concern any interpretation of the CBA as a whole, or a specific provision, but rather are governed by federal and state law. Specifically, the payment of overtime wages, the travel time policy promulgated by Comforce Corp. orally in 2002 and in writing in 2004, whether prevailing wages were required to be paid, and the withholding of wages with no signed authorization are at issue in the first five Claims for Relief along with the applicable federal and state labor laws. Nothing in the determination of those facts and rights at all implicates the CBA, they neither rely on the CBA nor do the claims require any interpretation or reading of the CBA.

The document purported to be a CBA is hardly that and it would be an abridgement of the plaintiffs' rights to enforce that document. Defendant Comforce Corp. suggest that plaintiffs have "expressly put at issue the CBA by referencing it and alleging that defendants allegedly violated the collective-bargaining agreement by failing

to adequately negotiate the travel time policy as required by the collective bargaining agreement and generally failing to follow the collective bargaining agreement." (MTD, at 9). It is well established that "not every suit concerning employment or tangentially involving a [collective-bargaining agreement] is preempted by [section] 301…if a state prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by section 301, *unless they require substantial interpretation of the collective-bargaining agreement.*" *Levy v. Verizon Info. Servs., Inc.,* 498 F.Supp.2d 586, 569 (E.D.N.Y. 2007) (emphasis added, internal citations omitted).

This line of reasoning was also set forth in *Alcantara v. Allied Properties, LLC,* 334 F.Supp.2d 336, (E.D.N.Y. 2004) as follows:

> The Court of Appeals for the Second Circuit has held that section 301 has no application in the absence of a currently effective [collective bargaining agreement]." *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 25 (2d Cir. 1988). The court has also "found cases invoking section 301's sweeping preemptive force . . . only where state law claims coincide with *current* collective bargaining agreements." *Id.* (emphasis in original) (citing *Int'l Bhd. of Elec. Workers v. Hechler*, 481 US 851, 851-52, 95 L. Ed. 2d 791, 107 S. Ct. 2161 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 203-04, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985)). "However, not every dispute . . . tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301' and [a] collective-bargaining agreement may . . . contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.'" *Hernandez*, 116 F.3d at 40 (quoting *Lingle*, 486 U.S. at 413 n.12). The Supreme Court has "underscored the point that § 301 cannot be read broadly to pre-empt *nonnegotiable* rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107,

> 123, 129 L. Ed. 2d 93, 114 S. Ct. 2068 (1994) (emphasis
> added). The Court was "clear that when the meaning of
> contract terms is not the subject of dispute, the bare fact
> that a collective-bargaining agreement will be consulted in
> the course of state-law litigation plainly does not require
> the claim to be extinguished." *Id.* at 124.

*Alcantara,* 334 F.Supp.2d at 343 (E.D.N.Y. 2004)

However, more significantly the class plaintiffs before the Court herein had a *nonnegotiable* right to sign a written authorization to withhold wages from their paychecks before it was done so by defendant Comforce Corp. They had a *nonnegotiable* right to be paid for travel time to a city away from their home location that included an overnight stay because such travel time is considered work time under federal (29 C.F.R. 785.39) and state (New York Labor Law §198198, 652, 655, 663 and 12 NYCRR 142-2.2) law. They had a *nonnegotiable* right to be paid time and one half for all travel hours that were work hours under federal and state law and exceeded 40-hours for the work week. They had a *nonnegotiable* right to be paid prevailing wages, per diem and mileage reimbursement under federal and state law on all jobs that were partially funded with public money. All of these rights were *nonnegotiable* and existed wholly independent of the purported CBA between defendants Comforce Corp. and Local 6171 and there are absolutely no terms in the CBA that require any interpretation for the plaintiffs to enforce the above *nonnegotiable* rights.

Furthermore, the Court in *Alcantara* specifically stated that § 301 has no application in the absence of a currently effective collective bargaining agreement. The CBA attached to the SAC is not signed, leaving it open as to when, if ever, it was actually in force and therefore an issue for discovery. Moreover, defendant Whittaker, the current

Local 6171 president, stated in his recorded telephone call attached to the SAC that he sent a letter to Comforce Corp. stating that he was no longer interested in maintaining the current relationship with them, a clear indication that the CBA was in fact terminated. In *Derrico v. Sheehan Emergency Hospital*, 844 F. 2d 22 (2nd Cir. 1988), the Court declared, "When a complaint alleges a claim based on events occurring after the expiration of a collective bargaining agreement, courts have held that section 301 *cannot* provide a basis for jurisdiction. *See, Derrico*, 844 F. 2d at 25 (emphasis added). Because plaintiffs allege ongoing violations of federal and state labor law, there can furthermore be no § 301 pre-emption for any violations occurring since the termination of the CBA.

As such, any and all arguments pertaining to the LMRA preempting and time-barring the plaintiffs' First, Second, Third, Fourth and Fifth Claims for Relief must be denied as there clearly is no LMRA preemption of those claims.

## POINT IV

### Plaintiffs' First And Second Claims For Relief Under The FLSA

Defendant Comforce Corp. relies heavily on the case of *Vadino v. Valley Engineers*, 903 F. 2d 253, 266 (3d Cir. 1990), to argue that the plaintiffs FLSA claims are preempted by the LMRA. See, Comforce Corp. MOL at page 9. However, that case is substantially factually different from the facts of the case at bar. In *Vadino*, the plaintiff brought concurrent LMRA and FLSA claims and the FLSA claim was premised on unpaid overtime. However, one of the factual issues in that case was the correct rate of pay from which to calculate any unpaid overtime and the correct rate of pay was found in a collective bargaining agreement. See, *Vadino*, 903 F.2d at 266. Therefore, a

substantial review of the terms of the collective bargaining agreement was necessary for the court to adjudicate the plaintiff's FLSA claim in that case.

In the plaintiffs' case at bar, there is no such issue because the CBA herein is completely silent on the rate of pay and, in fact, the plaintiffs in the class had individual employment contracts and individual rates of pay they negotiated with defendant Comforce Corp. completely outside and separate from any collective-bargaining that took place. Comforce Corp.'s brief at the bottom of page 10 quotes the CBA, then discusses the telecommunication contracts Comforce Corp. entered and then makes the bold conclusion that, "Comforce's entry into [telecommunication] contracts *presumes* that an agreement was reached with respect to wages, over time and per diem rates for each telecommunications installation contract." (emphasis added) Based on what can that *presumption* be made? Where is it in writing?  The only documents before the Court are the CBA that is silent on wages, overtime and per diem, and the individual employment agreements, which are evidence that Local 6171 was not the exclusive collective-bargaining representative for the plaintiffs.  At the top of page 11 of defendant Comforce Corp.'s MOL, it states, "If plaintiffs view their wages as a breach of the CBA, the grievance procedure to address such a complaint is clearly defined in Art. V of the CBA." Well, the plaintiffs bring their First and Second Claims for Relief under the FLSA, and subsequently under state law for the same acts, and not as a breach of the CBA.

Regarding Comforce Corp.'s arguments that the plaintiffs have failed to state a claim, found at pages 16-17 of its MOL, they failed to take notice of Exhibit 4 to plaintiffs' complaint, the spreadsheet submitted by plaintiff Eldred.  This Exhibit not only "at least approximately" alleges the hours for which wages were not paid, it specifically

lays them out.  Plaintiff Eldred's experience closely mirrors those of the other class members and therefore serves as an approximation of the total hours and rates of pay at issue.  Once the class is certified and discovery begins, all members of the class will be afforded an opportunity to similarly estimate their unpaid hours.

Also on page 17 of its MOL, Comforce Corp. discusses prevailing wages. Although "prevailing wages" have nothing to do with the plaintiffs' First and Second FLSA Claims for Relief, but rather is found in the plaintiffs' Fifth Claim for Relief, once again plaintiff Eldred's spreadsheet attached as Exhibit 4 sets forth the hours he worked and Exhibit 5 sets forth the prevailing per diem rates.  Actual prevailing wages are not as easily ascertainable and would require more extensive review of government databases and perhaps expert review of government and Comforce Corp. records, all of which can be accomplished through discovery.  In fact, plaintiffs have contacted a well-respected expert who has been admitted to testify before several federal and state courts throughout the United States regarding wage claims, with whom plaintiffs will work closely once discovery begins.

Exactly which jobs the plaintiffs worked that required prevailing wages is not within the knowledge of the plaintiffs because they personally did not enter those contracts, Comforce Corp. did, and as such that information is within the control of Comforce Corp. and must be disclosed during discovery.    However, in an attempt to obtain the information outside of Comforce Corp., plaintiffs have served a company known as Alcatel, or Alcatel-Lucent, with a subpoena requesting that information.  Upon information and belief, the vast majority of the installation contracts under which the plaintiffs worked for Comforce Corp. originated with a contract between Comforce Corp.

and Alcatel.  Plaintiffs' counsel has been working with in-house counsel at Alcatel

regarding the subpoena and is currently awaiting a final response upon Alcatel's thorough

search of its database.  However, Alcatel has already identified several contracts from

only 2008 that involved public entities and Comforce Corp. that may have required

prevailing wages, per diem and mileage reimbursement.


### POINT V

### Plaintiffs' Third Claim for Relief for
### Unauthorized Withholding of Wages


        Regarding Comforce Corp.'s arguments in Point II, C., that the plaintiffs' Third

Claim for Relief for violations of § 193 of the New York Labor Law  is preempted,

Comforce Corp. once again relies on a case with facts that are materially different and

distinguished from the facts of the instant matter.  In *Vera v. Saks & Co*., 335 F.2d 109,

(2nd Cir. 2003), a shoe salesman for the defendant sued for withheld commissions in

violation of § 193 as an unauthorized withholding of wages.  The working relationship

was governed by a collective bargaining agreement that had explicit language regarding

the calculation and payment of commissions.  The plaintiff's complaint in *Vera* also

apparently challenged the legality of a term in the CBA, see *Vera* at 115, 116.

        The facts of the instant matter before the Court are substantially and importantly

different.  In *Vera,* the *source* of the dispute originated in the collective bargaining

agreement, the calculation and payment of commissions, and the right the plaintiff was

seeking to enforce originated in the collective bargaining agreement.  However, the

plaintiff in *Vera* attempted to enforce that right outside the collective bargaining

agreement under New York Labor Law § 193.  In the instant matter, the *source* of the plaintiffs' right not to have wages withheld without written authorization originates not in the CBA, but rather directly under New York Labor Law § 193 because § 193 requires a signed authorization to withhold wages.  That obligation was not negotiated between the parties to the CBA, but rather exists under New York Labor Law wholly independent of any CBA.  It is a point of law that the plaintiffs have a right to enforce against their employer completely outside the scope of any purported collective bargaining.

This point was made herein at page 8 regarding *nonnegotiable rights*.  For example, when a union employee sustains an injury at work through the fault of his employer and there is a CBA in place with an arbitration clause, the employee is not bound to take his employer to arbitration under that clause to recover damages for the injury.  Rather, the employee enforces his right to recover damages for his injury by filing a workers compensation claim, which is a right that originates under New York State Workers Compensation Law completely independent of any negotiated terms in the CBA.  The fact that the CBA herein conveniently contained a form that an employee could possibly sign to authorize the withholding of union dues in no manner means that the right of the employee to give written authorization for the withholding originated in the CBA, it does not and in fact originates in New York Labor Law.  In fact, because the CBA does include such a form indicates that defendant Comforce Corp. was aware of the New York Labor Law provision and its failure to obtain any written authorization is a violation of § 193.

Furthermore, there is no language in the statute allowing for a union dues deduction to be "*presumptively*" authorized, as Comforce Corp. attempts to argue at

pages 11 and 18 of its MOL.  Either a written authorization is obtained or it is not, there are no presumptions.

## POINT VI

### Plaintiffs' Fourth Claim for Relief for
### Unpaid Wages under New York Labor Law

Defendant Comforce Corp. also argues that the plaintiffs' Fourth Claim for Relief brought under New York State Labor Law is preempted by the LMRA and supports this argument with the case of *Korthas v. Northeast Foods, Inc*., 2006 US Dist. Lexis 18846 (N.D.N.Y. 2006).  See, Comforce Corp. MOL at page 1.  However, once again, this case is substantially and materially factually different from the case at bar and therefore misleading to the Court.  In *Korthas*, the plaintiff originally filed his complaint in New York State Supreme Court in Cayuga County seeking damages for intentional infliction of emotional distress, defamation, malicious prosecution, tortious interference with contract and false imprisonment, all clearly tort actions.  See, *Korthas* at 1.  The court did in fact conclude that evaluation of the tort claim was inextricably intertwined with consideration of the terms of the labor contract and the claim therefore was preempted by § 301.

However, there is a clear and obvious distinction between the complaint in the *Korthas* case and the Fourth Claim for Relief currently before the court in that there are *no* tort actions set forth in the Fourth Claim for Relief that defendant Comforce Corp. attacks with the *Korthas* case.  In fact, the Fourth Claim for Relief is brought solely under New York State statutory and regulatory labor law, not common-law tort.  Furthermore, absolutely no examination of the CBA between defendant Comforce Corp. and Local

6171 is required by the Court in adjudicating the Fourth Claim for Relief.  As such, there is clearly no LMRA preemption of the Fourth Claim for Relief and therefore it is not time-barred.

## POINT VII

### Plaintiffs' Fifth Claim for Relief

Defendant Comforce Corp. further alleges that the plaintiffs' Fifth Claim for Relief, New York State-based claims alleging breach of contract (as a third party beneficiary) and unjust enrichment, and which also seek damages under New York Labor Law § 198, are untimely and fail to state a claim upon which relief can be granted because an ancillary federal statute fails to expressly define an enforcement mechanism. As the limitations period for this claim is six years, and the ancillary federal statutes have no bearing on the viability of the state-based remedies, Comforce Corp.'s arguments are wholly without merit.

Initially, Comforce Corp. suggests that the limitations period governing the Fifth Claim for Relief should be "within one year of the date of the last alleged underpayment."  See, Comforce Corp. MOL at 19 (citing NY Labor Law § 220 (g)). However, Comforce Corp. conveniently leaves out critical language in the statute it cites. The statute reads as follows in whole:

> § 220-g.  Additional enforcement of article
>
> For the purpose of enforcing this article, the affected employee may bring an action to *recover from the bond* which is required by section one hundred thirty-seven of the state finance law, of the contractor, the subcontractor or both, unpaid wages and supplements, including interest as provided for in subdivision eight of section two hundred twenty of this article, due to persons furnishing labor to either the contractor or subcontractor. Said action may be brought against the contractor, the subcontractor, *or*

> *the issuer of such bond*, without prior notice, within one year of the
> date of the last alleged underpayment, or within one year of the
> date of the filing of an order by the commissioner or other fiscal
> officer determining a wage or supplement underpayment. The
> employee may permit an employee organization or the
> commissioner or other fiscal officer to commence such action on
> his behalf.  (emphasis added.)

The plaintiffs do not bring the Fifth Claim for Relief to recover damages under a

bond and as such § 220-g is completely inapplicable.  Regarding New York Labor Law §

220 in general, it does not apply to the plaintiffs prevailing wages claims, but rather is

only enforceable by state employees.  See, *Gaston v Taylor*, 274 NY 359, 9 NE2d 9

(1937). (By enactment of this section, the legislature intended to impose upon the state

and its municipal corporations or civil subdivisions the same obligations to pay the

prevailing rate of wages to laborers, workmen and mechanics upon its public works in

ungraded or noncompetitive employment in classified public service, that it imposes upon

persons or corporations constructing public works by contract with the state or a civil

division thereof.)

Furthermore, the plain language of the Fifth Claim for Relief plainly and

unequivocally indicates that it is premised on a state-based common law theories such as

breach of contract, third party beneficiary, and unjust enrichment, not Labor Law § 220.

Thus, the proper limitations period governing these causes of action is six years in New

York.  *See* CPLR § 213 (1) (applicable to the unjust enrichment causes of action, as "an

action for which no limitation is specifically prescribed by law"); *Elliott v. Qwest

Communications Corp.*, 25 A.D.3d 897, 898 (3d Dept. 2006) (the limitations period to be

applied in an unjust enrichment claim is six years); CPLR § 213 (2) (applicable to the

breach of contract and third party beneficiary claims). As such, the Fifth Claim for Relief is not time-barred.

Next, Comforce Corp. cites a collection of cases for the proposition that the federal Davis-Bacon Act, presently codified at 40 U.S.C. § 3141 *et seq.*, precludes the Fifth Claim for Relief because said act provides no private right of action nor a specific enforcement mechanism.

The New York State Court of Appeals has expressly held in 2008 that employees may sue their employers for breach of contract, third party beneficiary and unjust enrichment when the employer fails to pay prevailing wages pursuant to federal law. *Cox v. NAP Constr. Co., Inc.*, 10 N.Y.3d 592 (2008). In *Cox*, the Court recognized that if the agreements at issue between the employer and governmental agency "were ordinary private contracts, there could be no doubt about [the workers'] right to sue on them." *Id.* at 601. Where Comforce Corp.'s installation contracts required it to pay its employees certain prevailing wages, "under long-settled rules [said employees] would be third-party beneficiaries of those promises." *Id.* (*citing Lawrence v. Fox*, 20 N.Y. 268 [1859]; Restatement [Second], of Contracts § 304). "As a matter of New York law," the Court continued, "the fact that the contractual provisions at issue were inserted in order to comply with statutes does not alter [the employees'] status as third-party beneficiaries." *Id.* at 602 (*citing Fata v. S. A. Healy Co.*, 289 N.Y. 401 [1943]; *Strong v. American Fence Constr. Co.*, 245 N.Y. [1927]).

The common-law breach of contract/third party beneficiary claims remain viable even if there are other valid statutory enforcement mechanisms in place. *Id.* at 602-03 (*citing Fata v. S. A. Healy Co.*, 289 N.Y. 401 [1943] ["where a valid statute requires the

insertion of provisions intended for the protection of laborers or other groups in contracts relating to matters which are subject to regulation by the State," a "contractual obligation is created which may be enforced by action brought by one of the group for whose benefit the provisions have been inserted"]); *see also United States ex rel. Johnson v. Morley Constr. Co.*, 98 F.2d 781, 788-89 (2d Cir 1938) (where the Honorable Learned Hand held that laborers are considered "donee beneficiaries" of a contract that incorporated the provisions of a statute passed to protect them).

Comforce Corp. also suggests that the Fifth Claim for Relief is an attempt to execute an "end-run" around the Davis-Bacon Act. See Comforce Corp. MOL at 20. The Court of Appeals expressly held that such an analysis in inherently "flawed." *Cox*, 10 N.Y.3d at 604. There is clearly no preemption of state-based common-law enforcement mechanisms, and

> [n]or is there any federal law with which state common-law remedies conflict, either in the sense that it is impossible to comply with both state and federal law or in the sense that state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Id.* at 605 (internal citations and quotations omitted). Indeed, when President Hoover vetoed legislation meant to provide a private enforcement mechanism to the Davis-Bacon Act in 1932, Secretary of Labor Doak remarked that "[t]he present law affords superior protection by leaving the matter of breach of its stipulations to be treated like a breach of any other stipulation of the contract" in a breach of contract suit. *Id.* at 605-06 (quoting Mem. of Secretary Doak, 75 Cong. Rec. 14589 [July 1, 1932]). Thus, it is abundantly clear that the plaintiffs' state-based common law breach of contract, third party

beneficiary and unjust enrichment causes of action seeking enforcement of prevailing wage statutes remain viable causes of action in New York.

Next, Comforce Corp. avers that the plaintiffs' third party beneficiary[1] and unjust enrichment claims must be dismissed because an adequate remedy exists at law. However, "A quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved . . . to assure a just and equitable result." *Bradkin v. Leverton*, 26 N.Y.2d 192, 197 (1970). Furthermore, in New York, "where a litigant fails to establish the right to recover upon an express contract he may, in the same action, recover in *quantum meruit* . . . [and] the case may be submitted to a jury on both theories and an election need not be made." *Smith v. Kirkpatrick*, 305 N.Y. 66, 73 (1953), *rearg denied*, 305 N.Y. 926 (1953*), overruled, in part, on other* grounds, *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358 (1981) (internal citations omitted).

In the case at bar, Comforce Corp. suggests that the unjust enrichment claim should be barred merely because of the existence of contracts between some of the parties – "the CBA and the contracts which governed the jobs on which Plaintiffs worked." The CBA is silent as to the issues alleged in the Fifth Claim for Relief, which are prevailing wages, per diem and mileage reimbursement and the installation contracts are not currently before the Court. As such, prior to the completion of discovery, it would be entirely premature to dismiss the claims for unjust enrichment where no contract has been

---

[1] It appears as though the defendants have mistakenly consolidated the third party beneficiary and unjust enrichment claims together in making their final argument. A third party beneficiary claim is an action at law that is premised on a breach of contract. Existence of a valid and binding contract is, therefore, a *sine qua non* of that cause of action. *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314 (1983). On the other hand, an unjust enrichment action is premised on the *absence* of a binding agreement on the issue in dispute. Thus, the law applicable to unjust enrichment actions is necessarily inapplicable to traditional third party beneficiary claims.

produced that expressly governs the terms and conditions placed at issue by the Fifth

Claim for Relief. *See, e.g., Joseph Sternberg, Inc. v. Walber 36th St. Assocs.*, 187 A.D.2d

225 (1st Dept. 1993) ("where there is a bona fide dispute as to the existence of a contract

or where the contract does not cover the dispute in issue, plaintiff may proceed upon a

theory of quantum meruit and will not be required to elect his or her remedies").  Thus,

the unjust enrichment claims in the Fifth Claim for Relief should not be dismissed.


## POINT VIII

### Plaintiffs' Sixth and Seventh Claim for Relief

Plaintiffs concede that this Claim for Relief is brought under the CBA and LMRA

and as such there is a six-month statute of limitations.  Therefore, only class members

who have worked for Comforce Corp. as of six months proceeding October 31, 2008,

may recover damages under these Claims for Relief.  The fact that the Sixth and Seventh

Claims for Relief are brought pursuant to a CBA and under the LMRA in no manner

implicates the CBA and the LMRA in the plaintiffs' other Claims for Relief against

Comforce Corp.  They are all separate and distinct claims that stand or fall independent

of each other and the plaintiffs may recover damages under those claims from October

31, 2005,for the FLSA claims and October 31, 2002,for the New York Labor Law claims,

as Comforce Corp. acknowledge at pages 17, 18 and 19 of its MOL.  Because there is a

six month statue of limitations on the Sixth and Seventh Claims for Relief the plaintiffs

bringing the first five Claims for Relief are not plaintiffs in the Sixth and Seventh Claims

for Relief and that class is narrower in scope.

## POINT IX

### Tenth Claim for Relief, Plaintiff Eldred's Individual Claim for Retaliation

Plaintiffs' Tenth Claim for Relief against defendant Comforce Corp. states a claim upon which relief can be granted and is inappropriate for dismissal. In order to state a claim under § 215 of New York Labor Law, plaintiff Eldred is required to plead that a complaint was made during the time of employment with defendant Comforce Corp. and there was a nexus between that complaint and retaliatory action of Defendant. *Higueros v. New York State Catholic Health Plan, Inc.*, 526 F. Supp.2d 342, 347 (E.D.N.Y. 2007).

First, defendant Comforce Corp. alleges that plaintiff's claim is time-barred by NYLL §215. (MOL at 21). There is a substantial question of fact as to when plaintiff's employment with defendant Comforce Corp. terminated and dismissal on the basis of statute of limitations would be inappropriate without discovery on this matter.

Although it need not be considered in evaluating the sufficiency of plaintiff's pleading, defendants' MOL clearly indicates the existence of a question of fact as to when Mr. Eldred's employment with Comforce Corp. actually ended. Specifically, Cit states plaintiffs "would have the option of accepting work offered or declining it." (MOL at 3-4). Mr. Eldred does allege he never alleges this reflects his termination from Comforce Corp. nor does he allege it reflects the last "violation" of §215.

Defendant inaccurately states in its MOL that Mr. Eldred "concedes that he was terminated 'for cause.'" (MOL at 21) and they erroneously claim that in ¶126 of plaintiffs' SAC he makes such a concession. The decision of the New York State Unemployment Appeals Board is contradictory in that it finds dismissal for cause but

allows benefits.  The decision should not be a basis for plaintiff Eldred's date of termination.

Defendants concede their employees may accept or reject the terms of jobs offered.  (MOL at 3-4.)  In October or November of 2005, in reliance of certain terms plaintiff Eldred accepted a job and traveled to the site where defendant Comforce Corp. breached those terms.  (SAC at 24-25.)  Plaintiff complained, commencing a pattern of discriminatory behavior by defendant Comforce Corp. which ultimately led to termination of his employment in retaliation.  (SAC at 25.)  Plaintiff has therefore stated a claim on which relief can be granted and dismissal of the Tenth Claim for Relief should be denied.

Regarding notifying the New York State Attorney General before filing the lawsuit, please see the Affidavit of Eldred attached hereto wherein he explains meeting with that office on March 12, 2008.


### POINT X

### Eleventh Claim for Relief, Plaintiff Eldred's
### Individual Claim for Wrongful Termination

Plaintiff Eldred's Eleventh Claim for Relief for wrongful termination in violation of his due process rights under the CBA states a claim on which relief can be granted. Defendant is correct that § 301 grants jurisdiction in lawsuits involving parties of collective bargaining agreements which seek interpretation of the CBA terms.

Plaintiff Eldred's Eleventh Claim for Relief contemplates more than a breach of the contractual obligations Comforce Corp. had under the CBA and extends to other contractual obligations.  While Plaintiff concedes terms of the CBA may be applicable to

his breach of contract claims, just as important are other oral and written representations, promises, and contracts made between he and Comforce.

In *Caterpillar, Inc. v. Williams* the Supreme Court made it clear the preemption is inappropriate where a state law has not been "completely preempted." *Caterpillar, Inc.*, 482 U.S. at 393. While the Court held that rights arising from collective-bargaining agreements and rights that depend on analyzing the language of such agreements do fall under the ambient of § 301, they held that allegations that an employer "breached *individual* employment contracts" with their employees do not. *Caterpillar, Inc.*, 482 U.S. at 394.

In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, (1988), the Court held that federal law did not preempt a claim that the plaintiff was wrongfully terminated for filing a workers compensation claim in violation of state law. The Court found that although "the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause … we disagree with the court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis." *Lingle*, 486 U.S. at 408.

In the instant matter, the SAC alleges in ¶ 120 that defendant Comforce Corp. breached terms of a contract with plaintiff Eldred to pay a per diem rate of $120 per day. Again in ¶ 117 the SAC alleges other occasions of breached contracts on the part of defendant Comforce Corp. Plaintiff believes that as a result of his complaints regarding per diem rates, Comforce Corp. breached their contractual obligations to him, terminating him in violation of their contractual agreement *and* in violation of the procedural rights found in the CBA.

Therefore, the Eleventh Claim for Relief cannot be preempted by LMRA. Additionally, this cause of action does not "arise under" § 301 and should not be preempted since the contractual issue plaintiff asks this Court to adjudicate does "not substantially depend upon interpretation of the collective-bargaining agreement." *Caterpillar, Inc.*, 482 U.S. at 394.

Plaintiff's Eleventh Claim for Relief is neither preempted by LMRA nor governed by § 215 of the New York Labor Law and therefore it is not time-barred. Defendants' motion to dismiss plaintiffs' Eleventh Claim for Relief should be denied.

## POINT XI

### Plaintiff's Twelfth Claim for Relief

Comforce Corp. argues that the plaintiff's civil RICO claim should be dismissed. First, they argue that a civil RICO claim cannot be brought concurrently with an FLSA claim that seeks damages for the same illegal acts pursuant to *Choimbol v. Fairfield Resorts, Inc.*, 2006 WL 2631791 (E.D. Va. Sept. 11, 2006), a case that certainly is not the law of the land nor, for that matter, the law of the Second Circuit. Moreover, the Court's decision acknowledged that neither the parties to the action nor the Court found any cases directly on point with respect to the FLSA's preclusion of a RICO claim. See, *Choimbol*, at 24. The Court only reached its conclusion that RICO claims were precluded by concurrently filed FLSA claims through its own review of the, "remedial schemes for RICO and the FLSA," and in previous Fourth Circuit decisions. See, *Choimbol*, at 24. This analysis certainly is not binding on a Second Circuit Court and whether it was sufficient at all even in the Fourth Circuit is questionable.

Furthermore, it is important to stress the distinguishing facts between *Choimbol* and those of the instant matter.  In *Choimbol*, the RICO allegations stemmed exactly from the same acts that served as the basis of the FLSA claims, which were wage and hour allegations.  *See, Choimbol* at 13 (Plaintiffs allege that Fairfield continues to conspire with both, A to Z and SCC to manipulate and falsify hourly rates of immigrant workers by misrepresenting the minimum wage and overtime pay for which they are entitled.)

In the instant matter before the Court, the allegations that serve as the basis of the plaintiffs' FLSA claims, which are a failure to pay travel time and/or overtime, do not serve as the basis for the RICO claims, which stemmed from allegations of fraud, extortion and larceny concerning union cards, union dues and lack of union representation.  As such, the claims are not mutually exclusive nor duplicative, but rather exist and can be prosecuted independent from each other.  Furthermore, in a case that was closer to home, the Court in *Godlewska v. HAD, Human Development Association, Inc*., 2006 U.S. Dist. Lexis 30519 (E.D.N.Y. 2006), allowed a lawsuit with claims under both civil RICO and the FLSA to go forward.

Regarding the argument pertaining to the RICO statute of limitations, the plaintiffs' remind the Court that their allegations in the complaint are of an ongoing nature.  As the plaintiffs filed their complaint on October 31, 2008, the plaintiffs concur with Comforce Corp.'s position that the plaintiffs' RICO claims accrued on October 31, 2004, or later. (See, Comforce Corp.'s MOL at page 24.)

Comforce Corp. also alleges that the plaintiffs have failed to state a claim upon which relief can be granted with regard to the RICO claim and that they must allege that their persons or property were injured by the corporate Comforce defendants.  In

response, the plaintiffs directed the courts attention to the Twelfth Claim for Relief that is
brought against Comforce Corp. as well as individual Comforce defendants, and more
specifically paragraph 232 which alleges:

> As a result of the foregoing, the plaintiffs and others
> similarly situated employees of the comp force had been
> *injured in their persons and their property* and that they
> have paid union dues under duress and fear of economic
> harm; paid union dues without receiving any union
> representation, rights or benefits in exchange for the dues;
> sustained other loss of earnings in the form of unpaid
> wages, on the prevailing wages, unpaid overtime, on paper
> veiling per diem and mileage reimbursement. (emphasis
> added)

The Comforce defendants also argue that the plaintiffs failed to plead fraud with
particularity.  First, the plaintiffs bring to the courts attention that the fraud is not the sole
predicate act on which they base their civil RICO claims.  Rather, the plaintiffs set forth
allegations of extortion, larceny by false promise and scheme to defraud under New York
State penal law, the definitions of which all satisfy predicate act requirements under civil
RICO rules.

With regard to pleading with particularity, the plaintiffs point to their statement of
facts that is approximately 34 pages in length, of which 13 pages specifically alleges facts
that are particular to the RICO fraud allegations.  (See, SAC pages 20-23 and 30-40.)
Furthermore, the plaintiffs attached an exhibit from Mr. Eldred setting forth a well
detailed history of dates of payments of union dues and the amounts of the dues (See,
Exhibit 4) as well as a transcript from a recorded telephone call with Alan Whittaker, the
Local 6171 president, in which he states, "*I can tell you that I contacted Pete Petix
(Comforce Telecom Vice President and General Manager) and said I was not interested*

*in, here's what it is, that is nothing more than selling fucking cards to y'all*." See, SAC paragraph 153. Defendant Whittaker made that statement during a conversation addressing the working relationship and lack of union representation for employees on Comforce Corp. jobs. Defendant Whittaker continued to state, "*About six weeks ago I sent a letter to the company stating that I was no longer interested in maintaining the current relationship with them, but they want to sit down and negotiate a true contract with wages, working conditions and benefits I was more than happy to do that.*" See, SAC paragraph 155. The conversation continued with Mr. Eldred stating, "*I had a crew of 10 or 15 guys I was the one working out the per diem or when a guy wanted to raise I went to the boss, you guys should have been doing this for me and everybody else.*" Defendant Whittaker responded, "*Absolutely I couldn't agree more. We have to demand bargaining with these companies (referring to Comforce Corp.) that actually includes wage schedules, benefits packages, working conditions, per diem allowances.*" Finally, defendant Whittaker concluded the discussion by stating, "*I think there's something crooked about the relationship.*"

In *Moore and Parry v. Painewebber, Inc.*, 189 F. 3d 165 (2nd Cir. 1999), the court set forth the basic pleading requirements to satisfy Rule 9(b). These are: 1) specify the statements claimed to be false or misleading; 2) give particulars as to the respect in which plaintiffs contend that the statement are fraudulent; 3) state when and where the statements were made, 4) identify those responsible for the statements; 5) identify the purpose of the mailing within the defendants fraudulent scheme; 6) allege facts that give rise to a strong inference of fraudulent intent. See, *Moore and Parry*, 189 F. 3d at 173.

Plaintiffs allege that the false and/or misleading statements are in the union cards and pay stubs with union dues deductions, as well as various statements from Comforce Corp. project managers and others that informed the plaintiffs that they would be working on a union job and therefore needed a union card. These statements are fraudulent in that they created a reasonable expectation in the plaintiffs of being a union member and receiving truly meaningful union representation that would go along with receiving a union card and paying union dues. The statements were made repeatedly over the course of many years to many if not all of the class plaintiffs. A precise history of the statements can be found in the payroll and other human resource records of defendant Comforce Corp., which will be subject to discovery. Those responsible for the statements are the individual Comforce defendants in that they have a working knowledge of the activities of the corporation and the procedure by which installation service jobs were obtained and workers for the jobs were hired. The purpose of the mailing within the fraudulent scheme was simply to be awarded telecommunication installation contracts and the profits from those jobs. Finally, all the facts alleged in the SAC, and in particular those stated above herein, create a strong inference of the fraudulent intent. Furthermore, should the court have any other questions regarding the adequacy of the civil RICO claims, the plaintiffs wish to direct the Court to their civil RICO statement filed with the Court.

For the reasons set forth herein, and the plaintiffs Twelfth Claim for Relief filed under civil RICO law must be allowed to continue in the defendant's motion to dismiss denied.

**POINT XII**

**Plaintiff's Fourteenth Claim for Relief – Conversion**

Comforce Corp. argues that the conversion claim is time-barred and fails to state a claim for relief upon which relief can be granted. These assertions are belied by the facts of the present case. First and foremost, conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. See, *State v. Seventh Regiment Fund, Inc.,* 98 N.Y.2d 249 (2002). A wrongful intention to possess another's property is not an essential element of a conversion action. See, *Re/Max All-Pro Realty, Inc. v. N.Y.S. Dep't of State,* 292 A.D.2d 831 (4th Dept 2002). There need not be a physical taking or dispossession of the property in question, since conversion may be indirect or constructive. *See, Ahles v. Aztec Enterprises, Inc.,* 120 A.D.2d 903 (3d Dept 1986). Further, a cause of action for conversion may be established based on the use of another's property without their consent. See, *Meese v. Miller,* 79 A.D.2d 237 (4th Dept. 1981). CPLR § 214(3) provides a three-year statute of limitations for actions for conversion, which "normally runs from the date the conversion allegedly took place. Where possession is originally lawful, a conversion does not occur until the owner makes a demand for the return of the property and the person in possession of the property refuses to return it." *Matter of Rausman*, 50 A.D.3d 909 (2d Dept 2008) (quoting Matter of King, 305 A.D.2d 683 (2d Dept 2003); *see also, Berman v. Goldsmith*, 141 A.D.2d 487 (2d Dept 1988).

Here, Comforce Corp. has made no attempt to show that their possession of plaintiffs' monies were ever lawful in light of NY Labor Law § 193. Labor Law § 193

expressly mandates that payroll deductions must be authorized by every employee by a signed writing, kept on file with the employer.  "Implicit authorization" of the withdrawals, as the defendants suggest, is simply a specious argument meant to distract this Court from the fact that they never obtained any authorization to make payroll deductions as mandated by New York State Law.  Every instance where Comforce withdrew funds from their employees without authorization is an act of conversion, and the limitation period begins anew with each new unauthorized withdrawal.

 As Comforce Corp. concedes, a conversion action for money will lie under New York law where there is a specific, identifiable fund and "an obligation to return or otherwise treat in a particular manner the specific money in question."  *Dover Ltd. v. A.B. Watley, Inc.*, 423 F.Supp.2d 303, 328 (S.D.N.Y. 2006) (*quoting LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir 1997) (internal citations omitted).  Here, Comforce Corp., in the absence of express authorization from each and every employee, had no right to withhold monies from the Plaintiffs and transfer them to CWA or any other entity.  The only way that plaintiffs' could have conceded that this relationship was appropriate is if there is a signed authorization for such withdrawals in the possession of the employer.  Such writings do not exist.  Therefore, because plaintiffs were at all time entitled to their pay without unauthorized withdrawals by Comforce Corp., a viable cause of action has been presented for conversion.

## POINT XIII

### Plaintiffs' Fifteenth Claim for Relief - Fraud

 Finally, Comforce Corp. avers that the Claim for Relief remised on fraud is time barred and fails to state a claim upon which relief can be granted.  It is abundantly clear

that "[t]he statute of limitations for a cause of action sounding in fraud is six years from the date of the wrong, or two years from the date the fraud could reasonably have been discovered, *whichever is later*." *Siler v. Lutheran Soc. Servs.*, 10 A.D.3d 646 (2d Dept. 2004) (emphasis added); *see also* NY CPLR 213 (8); NY CPLR 203 (g).  Thus, because Defendant Petix and other Comforce representatives knowingly made material misrepresentations of fact with knowledge of their falsity and with the intent to defraud Comforce employees of their alleged collectively bargained benefits within the previous six years, this action is not time-barred.

Next, Comforce Corp. suggests that the SAC, complete with 22 pages of facts, of which no less than 13 pages specifically reference alleged fraud by the defendants, is not plead with sufficient particularity.  The particularity requirement of FRCP 9(b) does not stand isolated from the remainder of the Federal Rules and it must be read in conjunction with FRCP 8(e), which requires pleadings to be "simple, concise, and direct" and FRCP 8(f), which requires that pleadings be construed so "as to do substantial justice." *Clairdale Enters. v. C. I. Realty Investors*, 423 F. Supp. 257 (S.D.N.Y. 1976).  Here, the SAC contains numerous statements attributed directly to the defendants that were intentionally false and misleading, including the sworn testimony presented at Eldred's unemployment hearing, which fraudulently denied plaintiffs of any meaningful union representation.  In fact, it also contains an express *admission* of the fraudulent relationship between Comforce and CWA.  *See* SAC at ¶¶ 153-60.

In the instant case, the information alleged to be vital to a proper complaint is uniquely in the hands of defendants themselves.  Plaintiffs have no way of producing documents and evidence that is maintained by the defendants that will confirm the

allegations of fraud in the SAC.  Indeed, the defendants current "thirst for detail as to these claims," lacking for years, now "may be satisfied by the various means of discovery available to it."  *In re Investors Funding Corp. Sec. Litig.*, 523 F. Supp. 550, 559 (S.D.N.Y. 1980).

In the event that this Court determines that the Fifteenth Claim for Relief for Fraud has not been pleaded with the requisite particularity, plaintiffs respectfully request leave to amend this Claim for Relief, along with the RICO Claim for Relief, to include additional factual information to the extent that it is available.   *See, Summer v. Land & Leisure, Inc.*, 664 F.2d 965 (5th Cir. 1981), *cert den* 458 U.S. 1106 (1982) (Dismissal for failure to comply with Rule 9(b) is almost always with leave to amend).  Plaintiffs maintain, however, that the requisite information to bolster the fraud cause of action is primarily, if not entirely, in the hands of the defendants.  As such, dismissal of the fraud cause of action would be unwarranted.

## CONCLUSION

For the reasons set forth above, the plaintiffs request that Motions to Dismiss filed by defendant Comforce Corp. and the individual Comforce defendants be completely denied and the plaintiffs' Second Amended Complaint be allowed to continue in whole through discovery.

Dated:  March 17, 2009                          Yours, etc.,


                                                s/Frank S. Gattuso
                                                Frank S. Gattuso, Esq.
                                                Bar Roll No. 513636
                                                O'Hara, O'Connell & Ciotoli
                                                *Attorneys for the Plaintiffs*
                                                7207 East Genesee Street
                                                Fayetteville, New York 13066
                                                Telephone: (315) 451-3810