UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

ERIC ELDRED, JR., RICHARD BORDEN,
MATTHEW CAEZZA, BRIAN FRANK,
and MARK  MACLAURY on behalf of
themselves and those similarly situated,

                              Plaintiffs,

        -against-                                                              3:08-CV-1171  (LEK/DEP)

COMFORCE CORP., d/b/a Comforce
Telecom, Inc., Comforce Information
Technologies, Inc., Comforce Technical
Services, Inc., Comforce Technical, LLC,
Comforce Operating, Inc., Sumtec Corp.,
and Prestige-Comforce Professional Services;
JOHN FANNING, individually and in his
capacity as Chairman and Chief Executive
Officer of Comforce Corp., Comforce
Information Tech., Inc., and Comforce
Operating; HARRY MACCARRONE,
individually and in his capacity as Chairman
and Chief Executive Officer of Comforce
Telecom, Inc., Comforce Technical Services,
Inc., and Sumtec Corp.; PETER PETIX,
individually and in his capacity as Vice
President and General Manager of Comforce
Telecom, Inc.; The COMMUNICATION
WORKERS of AMERICA; ANDY MILBURN,
individually and in his capacity as Vice President
of CWA District 6; RICHARD KNEUPPER,
individually and in his capacity as Assistant to
District Vice-President of CWA District 6;
DONNA BENTLEY, individually and in her
capacity as CWA Staff Representative in District
6; CWA Local 6171; ALAN WHITTAKER,
individually and in his capacity as President of
CWA Local 6171; MIKE SIMMONS, individually
and in his past capacity as President of CWA Local
6171; and LINDA JAMES, individually and in her
capacity as Executive Vice- President of CWA Local 6171,

                              Defendants.
_____

                                  1

## DECISION AND ORDER

Plaintiffs Eric J. Eldred ("Eldred"), Richard Borden, Matthew Caezza, Brian Fink, and Mark MacLaury (collectively, "Plaintiffs") commenced this action on behalf of themselves and those similarly situated seeking class certification pursuant to § 216 of the Fair Labor Standards Act ("FLSA") and Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs allege violations of the FLSA, the Labor Management Relations Act ("LMRA"), the National Labor Relations Act ("NLRA"), the Davis Bacon Act; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), New York Labor Law ("NYLL"), as well as breach of contract, unjust enrichment, fraud, and conversion.  Plaintiffs claim that Defendants Comforce Corporation and its various subsidiaries ("Comforce"), John Fanning ("Fanning"), Harry Maccarrone ("Maccarrone"), Peter Petix ("Petix"), Communication Workers of America, AFL-CIO ("CWA" or "the Union"), Andy Milburn ("Milburn"), Richard Kneupper ("Kneupper"), Donna Bentley ("Bentley"), CWA Local 6171("Local 6171"), Alan Whittaker ("Whittaker"), Mike Simmons ("Simmons"), and Linda James ("James") (collectively, "Defendants"), exploited the traditional employer/union relationship in unlawfully failing to pay Plaintiffs and members of the proposed class regular and overtime wages; making unauthorized deductions from their wages; failing to provide meaningful representation; making fraudulent misrepresentations regarding the true nature of the Comforce/CWA relationship; and engaging in a pattern of illegal racketeering.  Compl. (Dkt. No. 1) at ¶¶ 9-13, 35.  Currently before the Court is Plaintiffs' Motion for class certification (Dkt. No. 15) as amended (Dkt. No. 37-1); Defendants Fanning, Maccarrone, and Petix's Motion to dismiss Plaintiffs' Motion to proceed as a collective action and for class certification Motions to dismiss (Dkt. No. 43) and their separate Motion to dismiss (Dkt. No. 46); Defendant Comforce's Motion to dismiss (Dkt. No. 47); and

2

Defendants CWA, Local 6171, Milburn, Kneupper, Bentley, Whittaker, James, and Simmons'
Motion to dismiss (Dkt. No. 50).

## I.      BACKGROUND

Plaintiffs commenced the instant action on October 31, 2008, by filing their Complaint (Dkt.
No. 1), which they amended on December 8, 2008 (Dkt. No. 24), and again January 30, 2009.  (Dkt.
No. 37) ("Second Amended Complaint").  Plaintiffs' Second Amended Complaint asserts fifteen
claims for relief and court certification of three classes of plaintiffs.  The claims relate to Plaintiffs'
employment with Defendant Comforce from the mid-1990's to the present and the allegedly corrupt
practices committed in concert by Comforce and CWA.  Second Am. Compl.¶ 2, 4.

Comforce, headquartered in Woodbury, New York, is engaged in several businesses
including the installation of telecommunication equipment.  Id. ¶ 3.  Defendant Fanning is the
Chairman of the parent company, Comforce Corp.; Maccarrone is the Chairman of at least three of
its principle subsidiaries; and Petix is the Vice President and General Manager of Comforce
Telecom, Inc.  Id. ¶ 44-49.  All have offices in New York.  Id.

Comforce would instruct Plaintiffs to report to various job sites, to which they would travel,
often staying away from home overnight.  Plaintiffs' assert that many of these jobs involved projects
partially funded with public funds.  Once at the job site, they were often told that it was a union
project.  Plaintiffs allege that they were told that they were in a "pay to play" system under which
they had to be union members and pay union dues.  Id. ¶ 6.

Plaintiffs paid dues to CWA, a union headquartered in Washington, D.C. that represents
individuals employed primarily in the telecommunications industry, and its affiliate Local 6171,

based in Krum, Texas.  Id. ¶¶ 24, 39.  Milburn is the Vice-President of CWA District 6, the District responsible for locals situated in Texas; Kneupper is the Assistant to District Vice President of CWA District 6; and Bentley is a District 6 Staff Representative.  Id. ¶¶ 66-76.  All work out of offices in Texas.  Id.  Whittaker is the current President of Local 6171; Simmons was the previous President; James was the previous Executive Vice-President; collectively, they are responsible for the actions conducted in the name of Local 6171 during the relevant period.  Id. ¶¶ 81-85.

Local 6171 provided Plaintiffs with temporary union cards whenever they were working on job sites that requested employees have these cards.  Id. ¶ 92.  Comforce would, accordingly, deduct dues from Plaintiffs' wages.  Id. ¶ 6.  Plaintiffs, allegedly, never authorized the deductions.  Id.

CWA and Comforce entered into various collective bargaining agreements under which the terms and conditions of employment were documented.  See, e.g., Contract Agreement between Sumtec and CWA (Dkt. No. 1-2) ("the CBA").  The CBA, signed on behalf of Comforce by Petix and on behalf of CWA by Bentley, recognized the Union as the "exclusive collective bargaining representative for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment and other conditions of employment, for all of its employees in the collective bargaining unit."  Id. Art. I.  The CBA provides that "[t]he parties hereto agree to meet at the request of either party . . . for the purpose of negotiating with respect to wages, working conditions and other conditions of employment not covered by this initial Agreement."  Id. Art VIII.  It also contains provisions regarding discipline, including discharge of union employees and lays out grievance procedures.  Id. Art. V.  Plaintiffs never availed themselves of these procedures.  Plaintiffs assert that they had knowledge of the CBA, but never saw a copy despite their requests, until one was provided by Bentley on February 23, 2006.  Second Am. Compl. ¶ 98.  Plaintiffs also

4

allege that despite the CBA's guarantee that the Union would negotiate their employment contracts, in practice, employees had to negotiate these individually.

Plaintiffs allege that the whole arrangement between Comforce and the Union was "an enterprise designed to extract money from the plaintiffs and other similarly situated employees of Comforce for the benefit of the CWA." Id. ¶ 8. Essentially, Plaintiffs claim that Comforce unlawfully deducted wages, which they paid to the Union. CWA, meanwhile, provided no meaningful benefit to Plaintiffs and those similarly situated, but rather, in exchange for the dues paid to them by Comforce, "look[ed] the other way . . . while Comforce violated numerous federal and state laws that resulted in substantial economic loss to the plaintiffs." Id. Specifically, Plaintiffs allege that Comforce unlawfully deducted dues from its employees' wages and failed to pay them prevailing wages, proper per diem, travel expenses, and wages for travel time as required by state and federal law. CWA, meanwhile, is alleged to have failed to address these actions by Comforce or otherwise bargain on behalf of the employees it ostensibly represented.

Plaintiffs particularly emphasize the allegedly unilateral changes made by Comforce to its travel-time compensation policy. Plaintiffs assert that this policy had previously guaranteed payment for all work-related travel time. Id. ¶ 189. Allegedly, in 2002, Comforce unilaterally changed this policy, adopting a four hour maximum for compensable travel time. In 2004, Comforce adopted this policy in writing. Id. ¶¶192-94.

Plaintiffs allege, moreover, that they and others similarly situated, often worked, either including or excluding travel time, in excess of forty hours per week. Such work was to be paid at one and a half times the regular rate of pay pursuant to state and federal law. In such instances, however, Plaintiffs and those similarly situated were allegedly instructed that if their time sheets

5

indicated they worked over forty hours in a given week, those sheets would be rejected.  Id. at 208-13.  Plaintiffs thus allege that Comforce failed to fully compensate them.  Id.  Plaintiffs further allege that they and others similarly situated performed numerous activities directly related to their primary employment duties for which they received no compensation.  Id. ¶¶ 186-88.  Plaintiffs also allege that many of the projects that they worked on were partially funded with public money, yet Comforce failed to pay them the prevailing wage as required by law.  Id. ¶¶ 215-22.

Plaintiffs allege that Comforce would often adjust downwards the per diem rate that they were to receive and would inform Plaintiffs of this reduction only after they had accepted a job and often after they arrived at the job site.  One such instance allegedly occurred in October 2005, when Eldred accepted a job in Philadelphia to be paid at $27.50 per hour with a $120 a day per diem.  Id. ¶ 118.  Eldred allegedly negotiated this rate of pay personally, receiving no assistance from CWA. Id.  On the day he was to leave for Philadelphia, he was informed that the per diem would be reduced to $90 per day.  He objected, stating that this was not enough to cover his lodging, and Comforce asked for a day to rectify the problem.  Eldred went to Philadelphia, allegedly believing he would receive a $120 per day reimbursement.  Once there, he was told the per diem would be $90 or $95 per day.  Eldred told Comforce that this was not acceptable.  Comforce allegedly responded, "do what you have to do" and Eldred returned to New York.  Id. ¶ 122.  Eldred never received a work offer again from Comforce and objected when Eldred filed for unemployment benefits by filing an appeal with the New York State Unemployment Appeals Board.  Eldred received no representation from CWA or Local 6171 during this appeal, which ended in the Board's determination that he was fired for cause.  Id. ¶¶ 125-27.

## II.     DISCUSSION

### A.     Defendants' Motions to Dismiss

#### 1.     *Standard of Review*

When considering a motion to dismiss under 12(b)(6), a district court must accept the

factual allegations made by the non-moving party as true and "draw all inferences in the light most

favorable" to the non-moving party.  In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir.

2007).  "The movant's burden is very substantial, as 'the issue is not whether a plaintiff is likely to

prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'"

Log On America, Inc. v. Promethean Asset Mgmt. L.L.C., 223 F. Supp. 2d 435, 441 (S.D.N.Y.

2001) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal

quotation and citations omitted)).  In order to survive a motion to dismiss, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  Ashcroft v. Iqbal, ___U.S. ___, 29 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  A court should "begin by identifying pleadings that, because

they are no more than conclusions, are not entitled to the assumption of truth."  Id.  Next, if plaintiff

provides well-pleaded factual allegations, "a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement to relief."  Id.

#### 2.     *Preemption Under the LMRA*

Section 301 of the LMRA ("§301") provides that "[s]uits for violation of contracts between

an employer and a labor organization representing employees in an industry affecting commerce . . .

may be brought in any district court of the United States having jurisdiction of the parties . . . ."  29

U.S.C. § 185(a).  The section is accorded "unusual pre-emptive power."  Livadas v. Bradshaw, 512

7

U.S. 107, 122 n.16 (1994); Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003); Wynn v. AC

Rochester, 273 F.3d 153 (2d Cir. 2001).  Section 301 "governs claims founded directly on rights

created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of

a collective-bargaining agreement.'" Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987)

(quoting Electrical Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987).  Thus, "when resolution of a

state-law claim is substantially dependent upon analysis of the terms of an agreement made between

the parties in a labor contract, that claim must either be treated as a § 301 claim . . . or dismissed as

pre-empted by federal labor-contract law."  Allis-Chalmers Corp v. Lueck, 471 U.S. 202, 220

(1985).  This rule has been applied to pre-empt claims brought under common law tort, contract, as

well as under the NYLL where the claims required interpretation of a CBA.  See Id. at 211; Sheehan

v. United States Postal Service, 6 F. Supp. 2d, 141, 147-48 (N.D.N.Y. 1997) (Kahn, J.);  Vera, 335

F.3d 109.  It is not the case, however, that "every state-law suit asserting a right that relates in some

way to a provision in a collective-bargaining agreement, or more generally to the parties to such an

agreement, necessarily is pre-empted by § 301."  Allis-Chalmers, 471 U.S. at 220; see also Wynn,

273 F.3d at 157.  Rather, "when the meaning of contract terms is not the subject of dispute, the bare

fact that a collective-bargaining agreement will be consulted in the course of state-law litigation

plainly does not require the claim to be extinguished."  Livadas, 512 U.S. at 124.

     Where a claim is preempted, the LMRA requires that the plaintiff exhaust any grievance or

arbitration procedures established under the CBA prior to bringing a suit under § 301(a).  Clayton v.

Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of America, 451 U.S. 679,

681 (1981).  For "hybrid actions," that is, actions alleging both violation of the CBA under § 301 by

the employer and violation by the union of the duty of fair representation ("DFR"), the six-month

statute of limitations provided for in § 10(b) of the NLRA applies.  See DelCostello v. Int'l Bhd. of

Teamsters, 462 U.S. 151 (1983); Cohen v. Flushing Hosp. and Med. Ctr., 68 F.3d 64 (2d Cir. 1995);

Sheehan, 6 F. Supp. 2d at 145.

### 3.    *Plaintiffs' Causes of Action*

#### a.    *Plaintiffs Fail to Make Allegations Against Certain Defendants*

Although naming them as Defendants, Plaintiffs fail to make any allegations against

Comforce subsidiaries Comforce Information Technologies, Inc., Comforce Technical, LLC, and

Comforce Operating, Inc.  Plaintiffs note that these Defendants are subsidiaries of Comforce and

assert that all references in their Second Amended Complaint to "Comforce" include the named

subsidiaries.  Second Am. Compl. ¶ 2.  However, Plaintiffs fail to allege or otherwise provide any

evidence of acts attributable to these Defendants.  Thus, all claims against Defendants Comforce

Information Technologies, Inc., Comforce Technical, LLC, and Comforce Operating, Inc. are

dismissed.

#### b.    *Claims Under the Fair Labor Standards Act*

Plaintiffs' First and Second Causes of Action allege violations of the FLSA.  In their

first claim, Plaintiffs allege that Defendants Comforce, Fanning, Maccarrone, and Petix willfully

failed to pay Plaintiffs for normal and overtime work performed, including travel time covered

under the wage orders issued at 29 C.F.R. § 785.39,[1] in excess of forty hours per week.  Plaintiffs'

Second Cause of Action alleges that Comforce's unilateral change in policy regarding the reduction

of compensable travel time is void because the change violated the CBA and further violated

_____

[1]29 C.F.R. § 785.39 applies to travel that keeps an employee away from home overnight and designates such travel as compensable work time.

Plaintiffs' right to compensation for all travel-time covered under the FLSA, as well as time spent performing activities closely related to their primary employment.

Plaintiffs first claim requires no interpretation of the CBA.  The rights it alleges to have been violated have an independent statutory basis in sections 206 and 207 of the FLSA, which provide, *inter alia,* that employers shall compensate employees at their regular wage for all hours worked up to 40 hours per week, and one and one-half times that wage for hours in excess of 40 per week.  See 29 U.S.C. §§ 206, 207.  The right to this compensation does not spring from the CBA, nor does the CBA, which is utterly silent as to the rate of pay, provide any basis for the Court's inquiry into the validity of the claim raised.[2]  Plaintiffs' claim, therefore, is not preempted by § 301 and the simple fact that a CBA exists does not void Plaintiffs' rights under the FLSA.

29 U.S.C. § 255(a) sets the statute of limitations on FLSA claims at two years, or three where the violation is willful.  Finding that Plaintiffs have sufficiently alleged a willful violation, the Court dismisses all claims under Plaintiffs First Cause of Action insofar as they arise prior to October 31, 2005.  See McLaughlin v. Richland Shoe Co, 486 U.S. 128, 133 (1988).

Plaintiffs' second claim, turns on whether Comforce made unilateral changes to "working conditions" when it adopted the 2002 and 2004 policies affecting travel-time compensation.  This claim explicitly notes the importance of the CBA, and asks the Court to interpret the CBA's requirement that Comforce negotiate all changes to working conditions.  Second Am. Compl. ¶¶ 190-95.  As such, it is preempted by the LMRA.  Plaintiffs did not follow the grievance procedures detailed in the CBA or meet the LMRA's six-month statute of limitations.  Their claim is dismissed.

---

[2]Such a situation is markedly different from one which demands inquiry into what rate of pay contained in a collective bargaining agreement applies to a particular case.  See Valdino v. A. Valley Eng'rs, 903 F.2d 253 (3rd Cir. 1990).

### c.    Claims Under New York Labor Law

Plaintiffs' Third and Fourth Causes of Action allege that Comforce, Fanning, Maccarrone, and Petix violated state labor law.  Their third claim alleges that these Defendants deducted wages from Plaintiffs' pay without authorization in violation of NYLL § 193.  That section provides, in part, that "No employer shall make any deduction from the wages of an employee, except deductions which . . . are expressly authorized in writing by the employee and are for the benefit of the employee."  N.Y. LABOR LAW § 193(1)(b).

The CBA includes an authorization form that employees are to sign prior to Comforce's withholding of wages.  CBA Art III.  The inclusion of that template, however, does not mean that Plaintiffs' rights to receive all wages not authorized to be withheld originate in the CBA.  State law creates this right, and no interpretation of the CBA is required for Plaintiffs' allegation that these rights were violated.  N.Y. LABOR LAW § 193(1)(b).  The claim is not pre-empted by § 301.  It is, however, subject to a six-year statute of limitations and dismissed insofar as the violations alleged predate October 31, 2002.  See N.Y. LABOR LAW § 198(3).

Plaintiffs' fourth claim alleges violations of the NYLL resulting from the relevant Defendants' non-payment of wages and overtime pay.  For the reasons noted in the discussion of their first claim, the Court is not required to interpret anything in the CBA in order to decide these claims.  The claim is not pre-empted, but is also subject to a six-year statute of limitations.  N.Y. LABOR LAW § 198(3).

### d.    Third-Party Beneficiary and Unjust Enrichment Claims

Plaintiffs assert in their fifth claim, that Comforce, Fanning, Maccarrone, and Petix were unjustly enriched by their failure to pay prevailing wage, per diem, and mileage reimbursement to

Plaintiffs and those similarly situated on contracts funded, at least in part, with public funds.  They

claim breach of contract, allegedly as third-party beneficiaries to these public contracts.  Plaintiffs

bring these claims pursuant to federal and state law and seek judgement under NYLL § 198.

Plaintiffs' claim, insofar as it is alleged pursuant to federal law, is untenable.  Though not

mentioned in the Cause of Action, Plaintiffs' claim is based on the Davis Bacon Act.  See Second

Am. Compl. ¶¶ 10, 132; see also Pls.' Am. Mot. for Certification of Class Action (Dkt. No. 37-1)

("Pls.' Mot. for Certification") ¶ 4.  The Second Circuit has held that no private right of action

exists under that Act.  See Chan v. City of New York, 1 F.3d 96, 102 (2d Cir. 1993).  Next, to the

extent that Plaintiffs' seek to use state law remedies to recover wages for federally funded projects,

that too is precluded.  See Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003). ("To

allow a third-party private contract action aimed at enforcing wage schedules [in a federally funded

project] would be inconsistent with the underlying purpose of the legislative scheme and would

interfere with the implementation of that scheme to the same extent as would a cause of action

directly under the statute.") (internal quotations omitted); see also Sobczak v. AWL Indus., Inc, 540

F. Supp. 2d 354, 360 (E.D.N.Y. 2007) ("to the extent that plaintiffs' claims arise under state funded

contracts, to which state prevailing wage standards apply, Grochowski has no application").

New York Labor Law provides a similar statutory scheme for the administrative resolution

of prevailing wage claims as does the Davis Bacon Act.  See N.Y. Lab. Law § 220(3).  Under New

York law, however, employees are permitted to pursue their claims under the administrative

procedures provided therein or as third-party beneficiaries to the state funded contracts.  Wright v.

Herb Wright Stucco, Inc., 407 N.E.2d 1348 (N.Y. 1980); Fata v. S. A. Healy Co., 46 N.E.2d 339,

341 (N.Y. 1943); Sobczak, 540 F. Supp. 2d at 360-61.  In this action, Plaintiffs bring their claim as

third-party beneficiaries, thus obviating the need to comply with the procedures or statute of limitations under NYLL § 220. The relevant statute of limitations is six years. See N.Y. C.P.L.R. 213(2). Plaintiffs' contract claim, insofar as it relates to state-funded public contracts and arise no earlier than October 31, 2002, may proceed.

       *e.*   *Claims Under the CBA and LMRA*

Plaintiffs' Sixth and Seventh Causes of Action allege that Comforce, CWA, and Local 6171, breached the CBA and violated the LMRA respectively. Plaintiffs concede these claims arise under the CBA, are pre-empted by § 301, and are time-barred. Pls.' Mem. of Law in Opp'n to Def. Comforce and Individual Defs.' Mot. to Dismiss (Dkt. No. 56) ("Pls. Mem. Opp'n to Comforce") at 25. They are dismissed.

       *f.*   *Claims that CWA and Local 6171 Violated the Duty of Fair Representation*

Plaintiffs' Eighth Cause of Action alleges that CWA and Local 6171 breached their DFR by entering a CBA and receiving dues paid by Plaintiffs and those similarly situated but failing to provide any true or meaningful representation. As an initial matter, the CBA clearly states that CWA is the "exclusive collective bargaining representative." CBA Preamble; Art. I. Local 6171 is not a party to the CBA and cannot be held to have violated its DFR under that agreement.

DFR claims are subject to a six-month statute of limitations. DelCostello, 462 U.S. at 169-70. "The general rule in this circuit is that a cause of action accrues when 'the plaintiff could first have successfully maintained a suit based on that cause of action.'" King v. New York Tel. Co., Inc., 785 F.2d 31, 33 (2d Cir. 1986) (quoting Santos v. Dist. Council, 619 F.2d 963, 968-69 (2d Cir. 1984). In hybrid actions, plaintiffs' claims against the employer and the union accrues "no later than the time plaintiffs knew or reasonably should have known such a breach had occurred, even if

some possibility of nonjudicial enforcement remained." Santos, 619 F.2d at 969.

Plaintiffs began paying union dues upon being hired. Second Am. Compl. ¶ 6. They were also provided with union cards when on a union job. Id. ¶ 7. Plaintiffs were aware they were members of a union throughout their employment and that at various times attempted to call or otherwise inquire with the union about various work-related conditions. Id. ¶ 255. Plaintiffs knew that Comforce had unilaterally altered its travel time compensation policy by 2004. Id. ¶ 194. Nevertheless, Plaintiffs negotiated their own contracts, accepted the lack of union presence on job sites, and eventually, at least by February 23, 2006, received a copy of the CBA. Id. ¶ 76. Plaintiffs, therefore, reasonably should have known that CWA was not fulfilling its DFR prior to the six-month period before filing their Complaint. Their claim is time-barred and dismissed.

### g. *Plaintiffs' Other Common Law Claims*

Plaintiffs' Ninth, Fourteenth, and Fifteenth Causes of Action allege common law breaches. Their ninth claim alleges that  CWA and Local 6171 have been unjustly enriched by their receiving dues without providing true or meaningful representation. This claim essentially mirrors Plaintiffs' claim that the Union breached its DFR. State law claims are pre-empted where they are based on virtually the same underlying conduct forming the basis of a federal claim for breach of the DFR. See San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244 (1959); Peterson v. Air Line Pilots Ass'n, Int'l, 759 F.2d 1161, 1170 (2d Cir. 1985); Cooper v. TWA Airlines, LLC, 274 F. Supp. 2d 231, 249 (E.D.N.Y. 2003). Plaintiffs' allegations against the Union and Local 6171 is predicated on the identical conduct underlying their DFR claim, namely that these Defendants provided no representation in exchange for their dues. Having failed to identify independent conduct sufficient to distinguish the state claim from the federal cause of action, Plaintiffs' ninth

claim against the Union and Local 6171 is preempted.

Plaintiffs' Fourteenth Claim for Relief alleges conversion by Comforce, CWA, and Local 6171 insofar as these Defendant willfully and maliciously withheld funds owed to Plaintiffs on the pretext that these would secure union representation.  As to the Union and Local 6171, this claim is pre-empted for the reasons stated above with regard to Plaintiffs' ninth claim.

Plaintiffs allege that Comforce is liable for conversion insofar as it "sometimes" withdrew funds from employees' for its own financial gain, rather than sending it to the Union.  Second Am. Compl. ¶ 245.  Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Vigilant Ins. Co. of America v. Hous. Auth. of City of El Paso, Texas, 87 N.Y.2d 36, 43 (N.Y. 1995).  "To establish conversion the plaintiff 'must demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing' and that the defendant exercised an unauthorized dominion over that property, which can be specific money, to the exclusion of the plaintiff's rights.'"  Meese v. Miller, 436 N.Y.S.2d 237, 242-43 (4th Dept. 1981) (citations omitted).

Again, the fact that the CBA includes a template exemplifying the authorization employees must provide before Comforce could withhold their wages does not necessitate interpretation of the CBA to decide whether Comforce acted lawfully.  The pre-emptive effect of § 301 is not implicated by the inclusion of the authorization form in the CBA.  Plaintiffs' have a right to their wages without any withholdings not authorized.  N.Y. LAB. LAW § 193.  Plaintiffs have alleged facts supporting the conclusion that they have a superior right to their wages and that Comforce, nevertheless, sometimes used those wages for its own gain to the exclusion of Plaintiffs' rights.  They may proceed with their Fourteenth Cause of Action against Comforce.  It is, however, subject

15

to a three-year statute of limitations, which accrues at the time of conversion, not discovery.  See

N.Y. C.P.L.R. § 214(3); Sporn v. MCA Records, Inc., 58 N.Y.2d 482, 488 (N.Y. 1983); Vigilant

Ins. Co. of America, 87 N.Y.2d at 44-45.  "In the event of multiple conversions, the date of the

latest conversion is applicable in determining a claim that the complaint is barred by the three-year

Statute of Limitations."  Stanley v. Morgan Guar. Trust Co. of New York, 173 A.D.2d 390 (N.Y.

App. Div. 1991).  Accordingly, any alleged conversion occurring prior to October 31, 2005 is

dismissed.

   Plaintiffs' Fifteenth Claim for Relief alleges fraud against Comforce, CWA, and Local 6171

based on the false representation that these Defendants made regarding the benefits they were to

receive as union members.  "In alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  Plaintiffs, however, provide

scant information to support their fraud allegation against any of the Defendants.  Plaintiffs claim

that they and others similarly situated inquired "on numerous occasions" into the benefits they

would receive as members of CWA; that Comforce "repeatedly and falsely represented" the facts of

the situation; that they called Local 6171 on various occasions but were forwarded back to

Comforce's Human Resources Department.  Second Am. Compl. ¶¶ 250-65.  Other than describing

one phone call where Eldred was so directed to Comforce's Human Resources, Plaintiffs fail to

provide any information on who made the calls, who made the false misrepresentations, when they

were made, or other specific facts vital to their claim.  Given the lack of specificity, Plaintiffs'

fifteenth claim fails to meet the standard required by Rule 9 and is dismissed without prejudice.

   *h.   Plaintiffs' RICO Claims*

   Plaintiffs' Twelfth Cause of Action against Comforce, Maccarrone, Fanning, and Petix

16

alleges civil RICO violations comprising extortion, larceny by false promise, scheme to defraud, and mail and wire fraud stemming from the issuance of union cards, withholding of union dues, and failure to pay prevailing wages, overtime, and work-related travel-time.  Second Am. Compl. ¶ 229-32. Plaintiffs base portions of their RICO claim on violations of New York State Penal Law including larceny by false promise and scheme to defraud.  RICO, however, limits the state law offenses qualifying as "racketeering activity" to: "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1)(A).  Larceny by false promise and scheme to defraud are not RICO predicate offenses.  See id.; Weizmann Inst. of Sci. v. Neschis, 229 F. Supp. 2d 234, 255 (S.D.N.Y. 2002); Calabrese v. CSC Holdings, Inc., 283 F. Supp. 2d 797 (E.D.N.Y. 2003).

Moreover, much of what Plaintiffs allege is duplicative of their claims under the FLSA.  For example, in explaining their alleged injury to their persons and property, a required element of the RICO claim, Plaintiffs complain of "sustain[ing] other loss of earnings in the form of unpaid wages, unpaid prevailing wages, unpaid overtime, unpaid prevailing per diem and mileage reimbursement."  Id. ¶ 232.  Several circuits, including the Second, have found that where a statute provides an exclusive remedy, concurrent RICO claims based on the same conduct should be dismissed.  See Norman v. Niagra Mohawk Power Corp., 873 F.2d 634 (2d Cir. 1989) (affirming dismissal of RICO claims where the Energy Reorganization Act provided the exclusive remedy for the acts underlying the RICO claim).  Following this approach, and finding the FLSA "provides a sufficiently punitive scheme," one court has held that where a plaintiff's "RICO Claims [are] brought along side other

17

statutes which, like the FLSA, provide comprehensive remedies . . . Plaintiffs' RICO claims [should be] precluded." Choimbol v. Fairfield Resorts, Inc., No. 2:05-CV-463, 2006 WL 2631791 at *7 (E.D. Va. Sept. 11, 2006) (citing Norman, 873 F.2d at 637-38).  This approach ensures that the "[a]rtful invocation of controversial civil RICO, particularly when inadequately pleaded" does not endanger the uniform administration of core concerns of the primary enforcement scheme.  Norman, 873 F.2d at 637.

Finally, Plaintiffs' RICO claim is inadequately pleaded insofar as it alleges fraud.  As noted above, Plaintiffs must plead fraud with particularity.  FED. R. CIV. P. 9(b).  In the civil RICO context, this requires:

> the complaint to 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'  The plaintiffs must also 'identify the purpose of the mailing within the defendant's fraudulent scheme.'  In addition, the plaintiffs must 'allege facts that give rise to a strong inference of fraudulent intent.'

Moore v. PaineWebber, Inc., 189 F.3d 165, 173 (2d Cir. 1999) (internal citations omitted).

Plaintiffs fail to meet this standard.  Plaintiffs allege that Eldred paid union dues and spoke with Whittaker, the President of Local 6171 and not an employee of Comforce, about the cards.  They allege that "Comforce project managers and others" "repeatedly" made "numerous" and "various" statements "to many if not all of the class plaintiffs" "over the course of many years." Pls. Mem. Opp'n to Comforce at 33.  They fail, however, to isolate any particular act or representation made by specific Comforce personnel to any individual class plaintiff on any particular date.  Plaintiffs seem to admit to this deficit by noting that Comforce is in possession of the particulars, but these "will be subject to discovery."  Failing to meet the requirements of Rule 9(b) and admitting at their inability to do so absent discovery, Plaintiffs' Twelfth Cause of Action is dismissed with prejudice.

Plaintiffs' Thirteenth Cause of Action levels a similar RICO claim against CWA, Local 6171, Milburn, Kneupper, Bentley, Whittaker, Simmons, and James.  As an initial matter, the Court finds that it lacks jurisdiction over Milburn, Kneupper, Bentley, Whittaker, Simmons, and James (collectively, "the six union officers") and dismisses all claims against them.

Plaintiffs bear the burden of establishing the Court's jurisdiction.  See Bank Brussels Lambert v. Fuddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999); Stein Fibers, Ltd. v. Bondex Telas Sin Tejar, No. 1:08-CV-210, 2009 WL 385412 at *2 (N.D.N.Y. Feb. 10, 2009) (Kahn, J.).  To meet this burden, Plaintiffs must show that personal jurisdiction is proper under New York's general jurisdiction provision, N.Y. C.P.L.R. § 301, or its long-arm statute, N.Y. C.P.L.R. § 302, and comports with due process.  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194 (2d Cir. 1990); Stein Fibers, 2009 WL 385412 at *2.

Plaintiffs concede that § 301 has no application against the six union officers.  Dkt. No. 58 at 6.  Section 302 of the C.P.L.R. allows for jurisdiction over nondomiciliaries where they are engaged in some purposeful activity within the State and there is a substantial relationship between that activity and the plaintiff's cause of action.  See Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 43 (N.Y. 1988); Armouth Int'l v. Haband Co., 715 N.Y.S.2d 438, 439 (2nd Dept. 2000).  Plaintiffs, state that "discovery is likely to establish that the court has personal jurisdiction" under § 302. Plaintiffs appear to recognize the inadequacy of relying on later discovery to reveal information that they are required to provide in order to survive dismissal when they rest their jurisdictional claim instead pursuant to 18 U.S.C. § 1965.  Pls.' Mem Opp'n to FRCP 12(b)(6) Mot. to Dismiss by CWA, Local 6171, and Individual Union Defs. (Dkt. No. 58) ("Pls. Mem. Opp'n FRCP 12(b)(6) Mot.") at 8.

19

Plaintiffs bring their claim under 18 U.S.C. § 1964, which establishes civil remedies for RICO violations and grants district courts "jurisdiction to prevent violations" of RICO.  18 U.S.C. § 1965(a) provides, "Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."  Subsection (b) allows nationwide service for actions brought under § 1964 where "it is shown that the ends of justice require that other parties residing in any other district be brought before the court."  Plaintiffs fail to meet these criteria.

The Second Circuit recognizes that § 1965 "does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found." PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 71 (2d Cir. 1998).  Rather, under §1965(a) "a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant" Id.  Where nationwide jurisdiction is sought under § 1965(b), "jurisdiction is not automatic but requires a showing that the 'ends of justice' so require." Id.  The requirements of the "ends of justice" is generally considered to be met where no district could exercise jurisdiction over all of the defendants. Id. at 72 n.5; Daly v. Castro Llanes, 30 F. Supp. 2d 407, 413 (S.D.N.Y. 1998); see also Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 538-39 (9th Cir. 1986).

Plaintiffs concede that "it is unknown whether plaintiff can also rely on § 1965(a) for jurisdiction over the individual Union defendants."  Pls. Mem. Opp'n FRCP 12(b)(6) Mot. at 9.  But, they assert that jurisdiction under § 1965(b) is proper, claiming that, given the presence of Comforce and New York residence of the named Comforce officers, there is no district court that would have personal jurisdiction over all parties to the litigation.  Plaintiffs, however, level RICO

20

allegations against the Comforce Defendants in an entirely separate claim from their Thirteenth

Cause of Action leveled against CWA, Local 6171, and the six union officers.  That thirteenth claim

involves parties who are all subject to jurisdiction in a Texas district court.  Plaintiffs have failed to

prove that the six union officers are subject to the jurisdiction of this Court and their claim against

these officers is dismissed.

   As to CWA and Local 6171, Plaintiffs' claim suffers from the identical deficiencies that

formed the basis of the Court's dismissal of their Twelfth Cause of Action.  It relies on predicate

acts not provided for under RICO, alleges fraud without the particularity required under Rule 9(b).

It also fails to state a valid RICO claim against CWA or Local 6171.

   Plaintiffs allege that CWA and Local 6171 are an "enterprise" for RICO purposes.  Second

Am. Compl. ¶ 235.  They further allege that the six union officers are "persons" under RICO.  Id. ¶

236.  They thus acknowledge that 18 U.S.C. §1962(c)[3] "foresees two separate entities, a 'person'

and a distinct 'enterprise.'"  Cedric Kushner Promotions v. King, 533 U.S. 158, 160 (2001).

Enterprises, however, may not be liable under RICO, as only "persons" can be sued for violating

RICO § 1962(c).  See 18 U.S.C. §1962(c); Petro-Tech, Inc. v. Western Co. of North America, 824

F.2d 1349 (3rd Cir. 1987).  For purposes of  18 U.S.C. §1962(c) a "person" engaged in the

"enterprise" must be distinct from it.  Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,

30 F.3d 339, 344 (2d Cir. 1994); see also Bennet v. U.S. Trust Co. of New York, 770 F.2d 308 (2d

---

   [3] 18 U.S.C. § 1962(c) provides, "It shall be unlawful for any person employed by or
associated with any enterprise engaged in, or the activities of which affect, interstate or foreign
commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs
through a pattern of racketeering activity or collection of unlawful debt."

21

Cir. 1985) ("[R]equiring a distinction between the enterprise and the person comports with legislative intent and policy. Such a distinction focuses the section on the culpable party and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity"). Plaintiffs have alleged only the CWA and Local 6171 are "enterprises." As such, they cannot be held liable, and Plaintiffs' RICO claim against them must be dismissed.

> ### i.   *Plaintiff Eldred's Individual Claims*

Plaintiffs' Tenth and Eleventh Causes of Action relate to Plaintiff Eldred's allegedly wrongful discharge. Their tenth claim alleges violations by Comforce of NYLL § 215, which provides in part, "No employer . . . shall discharge, penalize, or in any other manner discriminate or retaliate against any employee (I) because such employee has made a complaint to his or her employer . . . that the employer has violated any provision of this chapter, or (ii) because such employee has caused to be instituted a proceeding under or related to this chapter." N.Y. LAB. LAW § 215(1)(a).

Plaintiffs' claim is time-barred. <u>See</u> N.Y. LAB. LAW § 215(2) (establishing a two-year statute of limitations). The latest of the alleged violations involved Plaintiff Eldred's discharge. Plaintiffs acknowledge that the New York State Unemployment Appeals Board found he was terminated for cause when he left the job site in November 2005. Second Am. Compl. ¶ 126. Thus, Plaintiffs failed to assert their claim within the two-year period allowed under NYLL § 215(2).

Plaintiff's eleventh claim for wrongful termination is clearly dependent upon the terms of the CBA. Plaintiffs allege, for example, "Comforce deprived Eldred of his contractual rights and protections *by not complying with the requirements of the collective bargaining agreement*..." Second Am. Compl. ¶ 252 (emphasis added). The allegation continues, claiming, "Comforce

thereby wrongfully terminated Eldred's employment *in violation of Article VI, Sections 1,2,4 of the collective bargaining agreement.*"[4]  Id. ¶ 253 (emphasis added).  State law claims, such as Plaintiffs' Eleventh Cause of Action, the adjudication of which depends upon extensive interpretation of the CBA are pre-empted under the LMRA.  See Allis-Chalmers, 471 U.S. 202, 209-21;  Sheehan, 6 F. Supp. 2d 141; Heaning v. Nynex-New York, 945 F. Supp. 640, 645 (S.D.N.Y. 1996).

### B.        Plaintiffs' Motion for Certification of Class Action

Plaintiffs seek class certification pursuant to the collective action provision of the FLSA, see 29 U.S.C. § 216, and Rule 23(b)(1), (2), or (3) of the  Federal Rules of Civil Procedure.  Mem. of Law in Supp. of Am. Mot. for Certification of Class Action (Dkt. No. 37-1) ("Pls.' Class Certification Mem").  The Court will review Plaintiffs' Motion for class certification only with regard to those claims not dismissed per the above discussion.

#### 1.        *Plaintiffs Proposed Classes*

Plaintiffs' Second Amended Complaint proposes three classes.  The first class, which Plaintiffs' bring under the FLSA's collective action provision, 29 U.S.C. § 216(b), relates to their First Cause of Action and consists of :

all persons who at times relevant hereto were employed by Comforce as non-exempt telecommunications installers and:

a) (First Claim) – where those employees were not paid regular and/or overtime compensation for their travel time that kept them away from home overnight, the travel occurred during the hours of the day which they normally worked, and such travel was clearly compensable work time under the FLSA, in particular 29 C.F.R. 785.39; and

Pls.' Mot. for Certification ¶ 2.

---

[4]Article VI of the CBA outlines the rules governing discipline of employees.  It announces procedures that must be followed prior to discharge including the determination of whether "just cause" exists.

Plaintiffs seek certification of two additional classes under Federal Rule of Procedure 23. Proposed Class II governs Plaintiffs Third, Fourth, and Fifth claims and comprises "all persons who at times relevant hereto were employed by Comforce as non-exempt telecommunications installers" and is further broken down into subclasses "A", "B", and "C" based on Plaintiffs' claims with:

> a) "Class II-A" – Third Claim for the named plaintiffs and similarly situated employees who had wages withheld from their pay checks for, but not necessarily limited to, union dues without having provided a signed authorization for Comforce to withhold wages in violation of New York Labor Law; and/or

> b) "Class II-B" – Fourth Claim for the named plaintiffs and similarly situated employees who were not paid wages for all hours worked, including hours spent traveling that are deemed work hours pursuant to 29 C.F.R. 785.39 and compensable under New York Labor Law and failure to pay for overtime for all hours worked in excess of 40 hours per week under New York Labor Law; and/or

> c) "Class II-C" – Fifth Claim for the named plaintiffs and similarly situated employees who worked for Comforce on projects that were [state] funded and did not receive prevailing wages, prevailing per diem, or prevailing mileage reimbursement as required by New York State Law.

Pls.' Mot. for Certification ¶ 4.

Plaintiffs' proposed Class III relates to the Fourth, and Fourteenth Claims for Relief. This proposed class covers:

> all persons who at times relevant hereto were employed by Comforce as non-exempt telecommunications installers *and* were members of CWA who,

> a) Paid union dues;
> b) Had union membership cards issued in their name;
> c) Were employed by Comforce; and
> d) Received no true or meaningful representation in exchange for the union dues incurring the economic harm as set forth in the . . . Third Claim[] for Relief.

Pls.' Mot. for Certification ¶ 6.

### 2. *Collective Action Certification Under FLSA § 216*

24

Section 216(b) of the FLSA allows for any employee to bring an action on behalf of himself or others "similarly situated" provided any employee willing to join such an action gives his consent in writing and files that consent with the court in which the action is brought.  29 U.S.C. § 216(b). District courts have discretion to authorize sending opt-in notice to potential plaintiffs in a collective action.  See Braunstein v. Eastern Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1979).  The requirements of Federal Rule of Civil Procedure 23, discussed below, do not apply to a court's approval of a collective action under the FLSA.  See Abrams v. General Elec. Co., No. 95-CV-1734, 1996 WL 663889 at *1 (N.D.N.Y. Nov. 4, 1996).  Under 29 U.S.C. § 216(b), Plaintiffs need not show numerosity, typicality, commonality, and adequate representation, but rather, need only show they and the proposed class members are "similarly situated".  Id.; see also, Schwed v. General Elec. Co., 159 F.R.D. 373, 375 (N.D.N.Y. 1995); Sobczak, 540 F. Supp. 2d at 362.  This requires only "'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  Sobczak, 540 F. Supp. 2d at 362 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997).

Plaintiffs easily meet the requirements for collective action under FLSA § 216(b).  Most notably, in alleging their claims under the FLSA, Plaintiffs point to Comforce's adoption of a travel-time compensation policy 2002 and 2004 that allegedly violates the FLSA.  Plaintiffs' submissions, including the presentation of this travel policy (Dkt. No. 1-4) which applies to all members of the proposed class are sufficient for conditional certification under FSLA § 216(b).

### 3.      FRCP 23(a) Prerequisites

Before a class can be certified under any provision of Rule 23(b), Plaintiffs must

satisfy the prerequisites of Rule 23(a).  See FED. R. CIV. P. 23(a) & (b).  Rule 23(a) lists four

prerequisites for class certification: "(1) numerosity (a 'class [so large] that joinder of all members

is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality

(named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation

(representatives 'will fairly and adequately protect the interests of the class')."  Amchem Prods. v.

Windsor, 521 U.S. 591, 613 (1997) (quoting FED. R. CIV. P. 23(a)).  Plaintiffs bear the burden of

demonstrating that the prerequisites are met.  See Caridad v. Metro-North Commuter R.R., 191 F.3d

283, 291 (2d Cir. 1999).  While the Court will undertake a rigorous analysis to determine if the

prerequisites have been satisfied, a motion for class certification does not require the Court to

consider the merits of the case.  Id.

> a.  *Numerosity*

Rule 23(a)(1) requires the prospective class be so large that joinder of all members is

"impracticable," though not necessarily impossible.  Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir.

1993). In the Second Circuit, "numerosity is presumed at a level of 40 members," Consol. Rail

Corp. v. Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs need not determine the precise

number or identity of potential class members to meet the numerosity requirement.  Robidoux, 987

F.2d at 935.  Plaintiffs, however, must offer some evidence supporting a reasonable estimate of the

number of potential class members.  Id.

Plaintiffs' submissions satisfy this element, alleging that at least 187 members of the class

residing in New York and upon information and belief as many as one thousand across the country.

Second Am. Compl. ¶ 28; Aff. Eric Eldred.  See Ruggles v. Wellpoint, 253 F.R.D. 61, 66

(N.D.N.Y. 2008) (Kahn, J.).  The affidavit and verified Second Amended Complaint show a class

26

meeting the numerical presumption and indicate the presence of other considerations relevant to the practicability inquiry, particularly the geographic dispersion of proposed class members. Robidoux, 987 F.2d at 936; Marcera v. Chinlund, 91 F.R.D. 579, 583 (W.D.N.Y. 1981).

b.      <em>Commonality and Typicality</em>

The commonality and typicality requirements tend to merge into one another as both seek to ensure that the named plaintiffs' claims are closely interrelated to those of the class. Marisol A. by Forbes v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997). Commonality exists if Plaintiffs claim shares a common question of fact or law with those of the class. Id. The typicality requirement, on the other hand, is satisfied when each class member's claim arises from the same course of events, and each class member will make similar arguments to prove a defendant's liability. Id. The claims of the named plaintiffs, however, do not need to be identical with those of each class member. Marriott v. County of Montgomery, 227 F.R.D 159, 172 (N.D.N.Y. 2005).

Plaintiffs allege commonality with respect to both questions fact and law. Pls.' Mem. of Law  in Supp. of Am. Mot. for Certification of Class Action (Dkt. No. 37-2) ("Pls.' Mem. Supp. Certification"). Plaintiffs allege that class members share identical relationships with Defendants and suffered similar harm with a difference only in degree based on the length of employment and jobs worked. Plaintiffs, relying on the Affidavit of Eric Eldred (Dkt. No. 15-1) and verification by Richard Borden, Mathew Caezza, Brian Fink, and Mark MacLaury of the allegations in the Second Amended Complaint, note the named Plaintiffs' years of substantially identical employment to at least 187 other proposed members and similar to that of hundreds more. Plaintiffs also allege that class members claims share common questions of law by virtue of these claims all being based on federal law or the laws of New York, to which Comforce is subject based on its residence and the

27

individual employment agreements between Comforce and the Plaintiffs and those similarly situated.  Pls.' Mem. Supp. Certification at 8-9.  Plaintiffs point to Comforce's travel and per diem policy as evidence of a common unlawful policy in contradiction to 29 C.F.R. 785.39 to which all class members  were subject as satisfying the typicality requirement.  Taken together, Plaintiffs' affidavits, pleadings, and presentation of Comforce's travel and per diem policy sufficiently meets the commonality and typicality requirements.

> ### c.    *Adequacy of Representation*

Rule 23(a)(4) requires that Plaintiffs demonstrate that the proposed action "will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  To determine whether class representatives meet this standard, courts consider several factors, including: (1) the representatives' understanding and involvement in the lawsuit; (2) their willingness to pursue the litigation; and (3) any conflict of interest between the representatives and other members of the class.  See Parker v. Time Warner Entm't Co., L.P., 239 F.R.D. 318, 38 (E.D.N.Y. 2007);  Marisol A., 126 F.3d at 378.

Defendants assert the Plaintiffs fail to show they adequately protect the interests of the proposed class, alleging (I) conflict of interest between the named Plaintiffs, all of whom are union members, and non-union members in the proposed class; (ii) Plaintiff Eldred's insufficiently moral character; and (iii) potentially incompetent counsel.[5]

The Court finds that Plaintiffs adequately represent the interests of the class.  Eldred's Affidavit exhibits sufficient knowledge concerning the Plaintiffs' claims to meet the knowledge requirement under Rule 23(a).  The other named Plaintiffs, all of whom have signed and verified the

---

[5] After the 2003 Amendments to Rule 23, the adequacy of class counsel is most properly considered under Rule 23(g). See Hilton v. Wright, 235 F.R.D. 40, 54 (N.D.N.Y. 2006).

Second Amended Complaint display similarly sufficient knowledge.  From their submissions, all appear to understand their role as class representatives.  See Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 201 (S.D.N.Y.1992); see also Dura-Bilt Corp. v. Chase Manhattan Corp., 89 F.R.D. 87, 102 (S.D.N.Y. 1981); In re Playmobil Antitrust Litig., 35 F. Supp. 2d 231, 243 (E.D.N.Y.1998); Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 62 (2d Cir. 2000).

The Court rejects Defendants' assertion that Plaintiffs' have conflict of interests sufficient to deny class certification.  Union membership could, in certain cases, be a fatal to certification of a class containing both union and non-union employees.  In the instant case, however, Plaintiffs' proposed subclasses rectify any potential conflicts which might arise.  The one exception to this finding is subclass A of proposed Class II, which includes both union and non-union employees, and "who had wages withheld from their pay checks for, but not necessarily limited to, union dues without having provided a signed authorization."  Given the named Plaintiffs' status as union members, the Court is not satisfied that their representation of non-union members included in this subclass would be free of significant conflicts.  Thus, the Court declines, at this time, to certify Plaintiffs as representatives of Class II, subclass A, but finds them to be adequate representatives with regard to all other proposed classes and subclasses.

The Court rejects Defendants' assertion that Eldred lacks proper moral character and credibility required to qualify as class representative.  Nothing suggests that a former employee's refusal to continue working at a rate he found unacceptable implicates that employee's  honesty or trustworthiness, or otherwise makes him an inadequate representative.

Finally, the Court must ensure Plaintiffs' counsel "fairly and adequately represent the

29

interests of the class" and meet the requirements of Rule 23(g)(1), which state, *inter alia*, that a court must consider (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1).  After review of the submissions made to the Court and given Plaintiffs' counsel's thirty years of experience, including complex litigation in state and federal courts, the Court finds the requirements of Rule 23(g) are met.

Except as to subclass II-A, Plaintiffs have satisfied the prerequisites of Rule 23(a).  For certification to be proper, Plaintiffs must also meet the requirements under Rule 23(b).

### 5.     *FRCP 23(b) Requirements*

Plaintiffs seek certification under any one of the categories set forth in Rule 23(b).  Pls.' Class Certification Mem. at 11.  Plaintiffs need only qualify under a single category for certification to be proper.  FED. R. CIV. P. 23(b); In re Simon II Litig., 407 F.3d 125, 132 (2d Cir. 2005).  The appropriateness of each of the categories depends upon the relief sought.

> The (b)(1) class action encompasses cases in which the defendant is obliged to treat class members alike or where class members are making claims against a fund insufficient to satisfy all of the claims.  The (b)(2) class action . . . was intended to focus on cases where broad, class-wide injunctive or declaratory relief is necessary.  Finally, the (b)(3) class action was intended to dispose of all other cases in which a class action would be "convenient and desirable," including those involving large-scale, complex litigation for money damages.

Allison v. Citgo Petroleum Corp., 151 F.3d 402, 412 (5th Cir. 1998) (internal citations omitted).  Where a class is certified under Rule 23(b)(1) or (b)(2), no notification is required

for absent class members; such notice is required if certification occurs under subsection

(b)(3).  FED. R. CIV. P. 23(c)(2).

> a.   *FRCP 23(b)(1)*

Rule 23(b)(1)(B) allows class certification if:

1) prosecuting separate actions by or against individual class members would create
a risk of:

***

(B) adjudications with respect to individual class members that, as a practical matter, would be
dispositive of the interests of the other members not parties to the individual adjudications or
would substantially impair or impede their ability to protect their interests

Plaintiffs assert that the action qualifies for certification under Rule 23(b)(1)(B) because any

adjudication with respect to Eldred individually could be dispositive of other class members'

interests and  might substantially impair or impede the ability of those members to protect their

interests.  Mot. for Certification of Class Action (Dkt. No. 15) ¶ 11.

Defendants rightly note that class certification under Rule 23(b)(1)(B) are typically based on

a limited fund theory.  <u>Ortiz v. Fireboard Corp.</u>, 527 U.S. 815 (1999); <u>Hilton v. Wright</u>, 235 F.R.D.

40, 53.  In <u>Ortiz</u>, the Supreme Court identified "presumptively necessary" conditions for certification

in limited fund cases.  <u>Ortiz</u>, 527 U.S. at 842.  These conditions  are "a 'fund' with a definitely

ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based

on a common theory of liability, by an equitable, pro rata distribution."  <u>Id.</u> at 841.  Where the

presumptively necessary conditions are absent, "the burden of justification rests on the proponent of

any departure from the traditional norm."  <u>Id.</u>  In the instant case, Plaintiffs have failed to identify or

indicate the insufficiency of any posited fund such that the individual plaintiffs would be

31

substantially impaired or impeded from protecting their interests through separate actions without being represented in this suit.  In such cases, certification under Rule 23(b)(1)(B) is improper.  See In re Simon II Litig., 407 F.3d at 137 (2d Cir. 2005).

> b.   FRCP 23(b)(2) Injunctive Class

Rule 23(b)(2) allows class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  FED. R. CIV. P. 23(b)(2).  This type of class action is "intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury."  Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 162 (2d Cir. 2001).  When plaintiffs seek certification under Rule 23(b)(2) and money damages, a court must assess the relative importance of the remedies sought and grant certification if the value of the injunctive or declaratory relief is predominant and class treatment is efficient.  Id. at 164.

Defendants argue that certification under Rule 23(b)(2) is inappropriate because Plaintiffs primarily seek money damages, not injunctive relief, pointing to the fact that every claim raised in Plaintiffs' Complaint seek monetary damage.  Defs. Mem. in Opp'n to Pls.' Mot. to Proceed as a Collective Action Under the FLSA and for Class Certification (Dkt. No 45) at 22.  While this fact is not dispositive of monetary relief predominating, the Court finds Plaintiffs have failed to show that "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits."  Robinson, 267 F.3d at 164.  Thus, certification under Rule 23(b)(2) is inappropriate.

c.     *Rule 23(b)(3) Money Damages Class*

For certification under Rule 23(b)(3), Plaintiffs must establish that: (1) common questions predominate over questions affecting individual plaintiffs; and (2) class resolution is the best means of adjudicating the case.  Amchem, 521 U.S. at 615.  The predominance requirement is more demanding than the commonality requirement in Rule 23(a): Plaintiffs must show that the case is subject to generalized proof applicable to the class as a whole.  Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/Mastermoney Antitrust Litig.), 280 F.3d 124, 136 (2d Cir. 2001).  In order to determine whether general proof predominates, courts must determine that the issues subject to generalized proof outweigh those issues that are subject to individualized proof.  See Augustin v. Jablonsky (In re Nassau County Strip Search Cases), 461 F.3d 219, 227-28 (2d Cir. 2006) (quoting Heerwagen v. Clear Channel Commc'ns, 435 F.3d 219, 226 (2d Cir 2006)).

Plaintiffs have met their burden.  The class definitions at issue in Class II include all Comforce employees who allegedly had wages deducted without authorization, or were deprived of their full compensation, or were not paid prevailing wage on state-funded contracts, all of which resulted from the implementation of allegedly unlawful policies by their common employer.  The predominant question raised is whether such a policy existed, and not whether any individual suffered its consequences on a particular job.  Similarly, for the subclasses comprising Class III, the definition includes all union employees who were not fully compensated for their time spent working, including travel-time or whose wages were converted by Comforce.  The predominant question with regard to these subclasses is, again, the common policy of their employer, and, in the case of conversion, whether Comforce had a policy of not obtaining authorization before withholding its employees' wages, whether proposed members had a superior right to those wages, and whether Comforce ever

33

used these deducted wages for its own gain.  While each of these claims may entail individual issues of proof, the issues subject to generalized proof predominates.[6]

      For reasons related to the above, the Court also finds that a class resolution is the best means of adjudicating the case.  The purpose of Rule 23 is to achieve "greater efficiency via collective adjudication and, relatedly, greater uniformity of decision as to similarly situated parties . . . .[w]hen plaintiffs are 'allegedly aggrieved by a single policy of defendants,' such as [a] blanket policy . . . the case presents 'precisely the type of situation for which the class action device is suited' since many nearly identical litigations can be adjudicated in unison." Augustin, 461 F.3d at 28 (internal citations omitted).  Plaintiffs assert the presence of such policies, most notably the travel-time compensation policy, but also Comforce's failure to get written authorization prior to withholding wages, and failure to pay prevailing wages on state-funded projects.  Thus, a class action is the most efficient manner in which to proceed and certification of the proposed classes is appropriate under Rule 23(b)(3).

      *d.*     *Plaintiffs' Proposed Opt-In Notice*

      The Court rejects to Plaintiffs' proposed opt-in notice.  Plaintiffs shall refine their "Introduction" and "Description of the Lawsuit," removing all parties against whom this action is dismissed and all reference to claims dismissed consistent with this opinion.  Plaintiffs shall explicitly state that the class is certified solely for the purpose of adjudicating those claims against the remaining Defendants.  Plaintiffs shall also remove section 7 "No Retaliation Permitted" as there is no evidence that Defendants have or will initiate such retaliation as described therein.  Plaintiffs shall note that the notice and its contents have been authorized by the Federal District Court, Northern

---

      [6]The determination of damages for individual plaintiffs should not be the sole reason for denying class certification. See Visa Check, 280 F.3d at 140.

District of New York, Honorable Lawrence E. Kahn.  Plaintiffs shall submit a copy of the proposed

notice to Defendants for comment on the content and form of the notice within 30 days of this

Decision and Order.  The parties shall meet and confer regarding any objections raised by Defendants

and submit to the Court a mutually agreed upon notice within 60 days of this Decision and Order.

Parties may submit supplemental briefings on this issue if they are unable to agree on the notice.

      The Court further directs Defendants to produce the names and addresses of the employees

covered under the classes as conditionally certified in this opinion.[7]  Plaintiffs will bear the cost of

notice.  See Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 178 (1974).


### III.      CONCLUSION

Accordingly, it is hereby

      **ORDERED**, that Plaintiffs' Motion for class certification (Dkt. No. 15) as amended (Dkt.

No. 37-1) is **GRANTED** in part, consistent with this Decision and Order; and it is further

      **ORDERED**, that Defendants Fanning, Maccarrone, and Petix's Motion to dismiss

Plaintiffs' Motion to proceed as a collective action and for class certification (Dkt. No. 43) is

**DENIED**; and it is further

      **ORDERED**, that Defendants Fanning, Maccarrone, and Petix's Motion to dismiss (Dkt. No.

46) is **GRANTED** in part and **DENIED** in part consistent with this Decision and Order; and it is

further

      **ORDERED**, that Defendant Comforce's Motion to dismiss (Dkt. No. 47) is **GRANTED** in

---

      [7]Defendants may seek decertification of parties who opt-in but arguably fail to meet the class
criteria.  See Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91, 96 (S.D.N.Y. 2003).

part and **DENIED** in part consistent with this Decision and Order; and it is further

      **ORDERED**, that Plaintiffs' second, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth claims are **DISMISSED** in their entirety; and it is further

      **ORDERED**, that Plaintiffs' fifteenth claim is **DISMISSED** without prejudice; and it is further

      **ORDERED**, that Plaintiffs' action is **DISMISSED** in its entirety as to Defendants Comforce Information Technologies, Inc.; Comforce Technical, LLC; and Comforce Operating, Inc.; and it is further

      **ORDERED**, that Defendants Communication Workers of America; Local 6171; Milburn; Kneupper; Bentley; Whittaker; Simmons; and James' Motion to dismiss (Dkt. No. 50) is **GRANTED** in its entirety and Plaintiffs' action is **DISMISSED** in its entirety as to these Defendants; and it is further

      **ORDERED**, that Plaintiffs shall submit a proposed notice to Defendants for comment on the content and form of the notice within 30 days of this Decision and Order.  The parties shall confer and submit to the Court a mutually agreed upon notice within 30 days thereafter; and it is further

      **ORDERED**, that the Clerk of the Court shall serve a copies of this Decision and Order on all parties.

      **IT IS SO ORDERED.**

      DATED: March 02, 2010
      Albany, NY

                         Lawrence E. Kahn
                         U.S. District Judge